# Illinois Official Reports

## Appellate Court

---

### *People v. Williams*, 2017 IL App (1st) 152021

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. OTIS WILLIAMS, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-15-2021 |
| Filed<br>Rehearing denied | June 30, 2017<br>July 24, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 96-CR-22798; the Hon. Michael B. McHale, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Robert Hirschhorn, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Joseph Alexander, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE LAMPKIN delivered the judgment of the court, with opinion.<br>Presiding Justice Gordon and Justice Reyes concurred in the judgment and opinion. |

**OPINION**

¶ 1        Defendant Otis Williams, who was convicted of murder, presented alibi testimony at his third-stage postconviction evidentiary hearing in support of his claim of ineffective assistance of trial counsel. At the close of defendant's evidence, the State moved for a directed finding, and the circuit court granted that motion. The circuit court found that the alibi witnesses were not credible and defendant thus failed to show trial counsel rendered ineffective assistance by not interviewing or calling those alibi witnesses.

¶ 2        Defendant argues that (1) the circuit court failed to apply the correct burden of proof and procedural rules when it granted the State's motion for a directed finding at the close of defendant's evidence and (2) the alibi testimony was unimpeached and sufficient to raise doubts about the reliability of the original verdict and the circuit court usurped the role of the jury by making ultimate determinations about witness credibility.

¶ 3        For the following reasons, we hold that the circuit court's findings about witness credibility and the weight and quality of the evidence were not against the manifest weight of the evidence. Accordingly, we affirm the judgment of the circuit court that granted the State a directed finding and denied defendant postconviction relief at the third-stage evidentiary hearing.

¶ 4                                          I. BACKGROUND

¶ 5        Defendant Otis Williams was found guilty in 1999 of the first degree murder of Gregory Sharp and aggravated battery with a firearm of Felicia Robinson. The street-gang-related shooting occurred on November 28, 1994, while Sharp and Robinson sat in Sharp's car at a stoplight on an expressway ramp in Chicago.

¶ 6        At the 1999 jury trial, three members of the street gang testified against defendant, who had accompanied them, along with numerous other street gang members, to carry out their gang leader's order to kill Sharp, a fellow gang member. See *People v. Williams*, 332 Ill. App. 3d 254, 257-59 (2002). Specifically, Delano Finch, Ramone Finch, and Kelly Quarles testified about their gang's hierarchy and rules, the order to kill Sharp, their preparation and meeting before driving to find Sharp, and observing defendant and other gang members approach Sharp's car and fire their guns multiple times into Sharp's car.

¶ 7        Delano and Ramone testified that they were incarcerated at the time of their testimony. Delano had been indicted on about 50 counts in a drug conspiracy and faced a minimum sentence of life in prison. In exchange for his testimony against defendant and many other gang members, Delano received a sentence of 15 years' imprisonment. Ramone received a reduced sentence of 8 years' imprisonment for armed robbery and home invasion, in exchange for his testimony against defendant, for which the sentencing range was 30 to 60 years. Quarles denied that he was offered or promised a deal in exchange for his cooperation at the time that he gave a statement to law enforcement about various crimes, including the murder of Sharp. Rather, Quarles testified that the 60-month prison sentence he received for pleading guilty to racketeering was reduced to 17 months following a motion to reduce sentence, during which his counsel informed the court of Quarles's cooperation. Quarles denied knowledge of an offer for a reduced sentence in exchange for testimony against defendant.

¶ 8    Defendant was sentenced to consecutive prison terms of 45 years for the first degree murder of Sharp and 10 years for the aggravated battery with a firearm of Robinson. On direct appeal, this court affirmed his conviction and sentence for the first degree murder of Sharp but reversed defendant's conviction and sentence for the aggravated battery with a firearm of Robinson because the evidence did not show that she had been injured. *People v. Williams*, 332 Ill. App. 3d 254 (2002).

¶ 9    Defendant's initial 2003 *pro se* postconviction petition was summarily dismissed, but this court reversed that dismissal and remanded the cause for second-stage postconviction proceedings because the summary dismissal occurred after the 90-day ruling period had expired for first-stage petitions. *People v. Williams*, No. 1-03-3233 (Mar. 3, 2005) (unpublished summary order under Supreme Court Rule 23(c)). On remand, defendant's 2009 amended postconviction petition alleged he was denied effective assistance of counsel because trial counsel failed to interview and call alibi witnesses. Defendant also filed in 2010 a petition for relief from judgment under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2010)), contending newly discovered evidence established that the State's occurrence witnesses had perjured themselves. The State moved to dismiss both the postconviction and section 2-1401 petitions, and the circuit court granted those motions.

¶ 10    On appeal, this court affirmed the dismissal of defendant's section 2-1401 petition for relief from judgment. *People v. Williams*, 2013 IL App (1st) 110304-U.   However, this court reversed the second-stage dismissal of defendant's postconviction petition and remanded that petition for an evidentiary hearing. This court, taking defendant's well-pleaded facts as true, held that defendant made a substantial showing that trial counsel's failure to call one alibi witness and investigate two other alibi witnesses was objectively unreasonable. This court also held that defendant made a substantial showing of prejudice because the only evidence linking him to the crime scene was the testimony of the State's three occurrence witnesses, Delano, Ramone, and Quarles, who had received significantly reduced sentences in exchange for their testimony, and defendant's proposed alibi witnesses could have tested their credibility.

¶ 11    At the evidentiary hearing on remand in November 2014, defendant's sister Gabrielle Williams testified that, on the date of the offense, her nephew had a birthday party at her mother's house on South Wallace Street in Chicago. The party began around noon and ended about 7 or 8 p.m. The party was held throughout the house, and defendant was responsible for "managing the kids" in the television room. Gabrielle admitted that she was not in defendant's presence during the entire party; however, she asserted that he was supervising children between 3 and 5 p.m., when the offense occurred, and Gabrielle never lost sight of him during those two hours because her mother's house was "not that big." Gabrielle never saw defendant leave the party. She did not testify at defendant's trial and did not speak with his trial counsel. She made several attempts to contact trial counsel each week over the two- to three-month period prior to the trial. Also, she was in the courtroom once during the trial but never spoke to counsel. She was unable to recall the names of everyone who attended the party and similar details or the specific dates or times she attempted to contact trial counsel. Her sister Glynda contacted her in 2006 about submitting a postconviction petition affidavit in defendant's case. Gabrielle's affidavit did not list her sisters Gail, Glynda, or Ginger as being at the birthday party.

¶ 12    Defendant's sister Gail Alexander testified consistently with Gabrielle about defendant's supervision of several children in the television room at the birthday party. Gail never saw him

leave the party, but she did not watch him constantly and spent time with other people at the party. Gail spoke with defendant's trial counsel about her alibi testimony about one month before the trial in counsel's office, and he told her that she would testify at the trial. On the first day of the trial, she followed counsel's instructions to wait outside the courtroom but was never called to testify. Gail thought she asked counsel why she was not called as a witness but did not remember his answer. Gail did not remember specifically when she began leaving messages for counsel or when she received the postconviction petition affidavit to sign, who gave it to her, or how she obtained it.

¶ 13 Defendant's sister Glynda Williams testified that she had contact with defendant throughout the family party, never lost sight of him, and would have noticed if he had left before the party ended at about 7 or 8 p.m. Glynda tried to contact defendant's trial counsel by telephone for several months before the trial and left messages, but counsel never returned her calls until a week before the trial. After a conversation with trial counsel, Glynda went to the courthouse and spoke with him again; her mother and sisters were present for this conversation, which occurred outside the courtroom. Counsel told them they would testify and should wait outside the courtroom; however, they were never called as witnesses. When Glynda questioned counsel about this, he did not give her a reason for not calling them as witnesses and said they could win the case on appeal. Glynda acknowledged that her postconviction petition affidavit did not specify when or how many times she tried to contact counsel, the content of the messages she left him, any reference to her meeting with counsel a week before the trial, or any details about that conversation.

¶ 14 Defendant testified that on the date the shooting occurred he was at his family's birthday party from about 10 a.m. to 8 p.m. and never left during the party. He spoke with trial counsel several times after his 1996 arrest and before the trial began in November 1999. They discussed the subject of his alibi after he was released on bond and before and after discovery had concluded. Defendant gave counsel a list of the names of family members and friends who could testify as alibi witnesses and their contact information. However, several family members, including defendant's sisters, told him trial counsel did not contact them. When defendant was incarcerated in the summer of 1999, he met with counsel and reminded him of the alibi testimony. Counsel responded that "he [was] still looking into it." They discussed putting on witnesses, and counsel said they would "see how it goes." During the trial, defendant's mother spoke to him by telephone and said trial counsel made defendant's sisters wait outside the courtroom during the trial. Counsel never explained to defendant why counsel did not call defendant's sisters as witnesses. Defendant acknowledged that his affidavit did not mention the birthday party alibi or include a complete list of the people who could verify his alibi.

¶ 15 At the close of defendant's evidence, the State moved for a directed finding, arguing that the alibi witnesses were not credible and defendant failed to meet his burden to show his trial counsel was ineffective. The circuit court granted the State's motion for a directed finding. The court found that defendant's alibi witnesses were not credible. Specifically, Gabrielle's claim that she never lost sight of defendant from 3 to 5 p.m. was "farfetched" because there were seven rooms and a basement in the house, there were many guests at the birthday party, and Gabrielle had been engaged with other people at the party. Also, Gabrielle's affidavit lacked detail, she could not recall facts or details about important information, and she was evasive in answering questions. Concerning Gail, the court found that portions of her testimony were

incredible and contradicted her affidavit. The court concluded it was reasonable to infer trial counsel realized after he met Gail that the alibi testimony would be weak and made a strategic decision not to present it. Concerning Glynda, the court found her testimony evasive, defensive, flippant, hostile, and absolutely unbelievable. Her claim to know where defendant was at all times at the party even though they were in different rooms was disingenuous. Finally, defendant's testimony was self-serving, and his vague affidavit, which was only three sentences long and gave no details about his alibi or the birthday party, was calculated to avoid impeachment by filling in the details later at the evidentiary hearing. The court concluded there was no reasonable probability that the outcome of defendant's jury trial would have been different if counsel had presented the alibi testimony at the trial.

¶ 16       Defendant timely appealed.

¶ 17                                     II. ANALYSIS

¶ 18       On appeal, defendant argues (1) the circuit court's decision to direct a finding in favor of the State without requiring the State to present any evidence was procedurally improper and (2) the circuit court usurped the role of the jury by making ultimate credibility determinations about the alibi testimony, which defendant contends was consistent, not impeached, and sufficient to raise doubts about the reliability of the original verdict.

¶ 19       The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)) enables a defendant to challenge a conviction for violations of federal or state constitutional rights by showing that he suffered a substantial deprivation of those rights during the proceedings that resulted in the conviction. *People v. Pendleton*, 223 Ill. 2d 458, 471 (2006). A postconviction proceeding is not an appeal from the judgment of conviction but is a collateral attack on the trial court proceedings. *People v. Petrenko*, 237 Ill. 2d 490, 499 (2010).

¶ 20       Postconviction proceedings may go through three stages; in the first stage, the circuit court may dismiss the petition if the court finds it is frivolous and without merit. *Pendleton*, 223 Ill. 2d at 472; 725 ILCS 5/122-2.1(a)(2) (West 2014). If the petition is not dismissed, it moves on to the second stage, during which the State may move to dismiss the petition following any amendments made to the petition by defendant's counsel. *Pendleton*, 223 Ill. 2d at 472; 725 ILCS 5/122-5 (West 2014). If the State does not file a motion to dismiss or the motion is denied, then the proceedings move to the third stage, in which the defendant may present evidence to support his petition. *Pendleton*, 223 Ill. 2d at 472-73; 725 ILCS 5/122-6 (West 2014).

¶ 21       "Throughout the second and third stages of a postconviction proceeding, the defendant bears the burden of making a substantial showing of a constitutional violation." *Pendleton*, 223 Ill. 2d at 473. The dismissal of a postconviction petition at the second stage is warranted only when the petition's allegations of fact, liberally construed in favor of the defendant and in light of the original trial record, fail to make a substantial showing of a constitutional violation. *People v. Coleman*, 183 Ill. 2d 366, 382 (1998). The second stage of review tests the legal sufficiency of the petition; the circuit court does not engage in any fact finding or credibility determinations, and the well-pleaded allegations in the petition are taken as true unless affirmatively refuted by the record. *People v. Domagala*, 2013 IL 113688, ¶ 35. We review *de novo* a second-stage dismissal of a postconviction petition. *People v. Vincent*, 226 Ill. 2d 1, 14 (2007).

¶ 22    However, at a third-stage evidentiary hearing, the defendant must show, by a preponderance of the evidence, a substantial violation of a constitutional right. *People v. Coleman*, 2013 IL 113307, ¶ 92. The circuit court has wide discretion in deciding what evidence to consider (*People v. Coleman*, 206 Ill. 2d 261, 278 (2002)) and acts as the finder of fact at the evidentiary hearing, resolving any conflicts in the evidence and determining the credibility of witnesses and the weight to be given particular testimony (*Domagala*, 2013 IL 113688, ¶ 34). When a petition is advanced to a third-stage evidentiary hearing, where fact finding and credibility determinations are involved, we will not reverse a circuit court's decision unless it is manifestly erroneous. *Pendleton*, 223 Ill. 2d at 473; see *People v. Hughes*, 329 Ill. App. 3d 322, 325 (2002) (a ruling is manifestly erroneous only if it contains error that is clearly evident, plain, and indisputable). However, if no fact finding or credibility determinations were involved, then our review of a third-stage dismissal is *de novo*. *Pendleton*, 223 Ill. 2d at 473.

¶ 23                    A. Directed Finding at a Postconviction Evidentiary Hearing

¶ 24    Defendant contends he should be awarded a new trial because the circuit court used the wrong procedure to address the wrong question when it granted the State's motion for a directed finding after the defense completed the presentation of its alibi evidence at the third-stage evidentiary hearing. Defendant argues that the procedural posture presented by the State's third-stage motion for a directed finding required the circuit court to construe all the evidence in the light most favorable to defendant and refrain from making any witness credibility determinations. Accordingly, the circuit court should have assumed the truth of the testimony of defendant and his three sisters, *i.e.*, that defendant was attending a birthday party miles away from the crime scene and trial counsel knew about but failed to use this alibi testimony to challenge the credibility of the State's three compromised occurrence witnesses, Delano, Ramone, and Quarles. Defendant argues the circuit court, in the context of the State's motion for a directed finding, was limited to determining whether defendant's evidence, viewed in the light most favorable to defendant, was sufficient to make out merely a *prima facie* case of a substantial showing of ineffective assistance of trial counsel. Defendant contends the circuit court "erred badly in granting a directed verdict, based on a credibility finding it had no legal authority to make."

¶ 25    Defendant also argues that this court should grant defendant a new trial because remanding this matter to the circuit court for a continuation of the evidentiary hearing would be futile. According to defendant, the only way the State could overcome defendant's substantial showing of ineffectiveness of trial counsel would be to demonstrate that trial counsel adequately investigated the alibi and made a reasonable decision to reject the alibi testimony. Defendant speculates that any such evidence would necessarily require the testimony of defendant's trial counsel, but that would be impossible because trial counsel's Illinois attorney registration information indicates he was transferred to inactive status in May 2010 as "incapacitated from continuing to practice law" and his obituary indicates he died in March 2015 of complications from Alzheimer's disease. We note, however, that the record indicates trial counsel, who is now deceased, was assisted by another attorney during defendant's trial.

¶ 26    Defendant's appeal essentially attempts to apply the standard for a motion for a directed finding in a criminal trial to his third-stage postconviction evidentiary hearing. In a criminal trial, the directed finding standard provides that "[w]hen, at the close of the State's evidence or

at the close of all the evidence, the evidence is insufficient to support a finding or verdict of guilty the court may and on motion of the defendant shall make a finding or direct the jury to return a verdict of not guilty, enter a judgment of acquittal and discharge the defendant." 725 ILCS 5/115-4(k) (West 2014). The purpose of a motion for a directed finding in a criminal trial is to test the constitutional sufficiency of the evidence by determining whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Connolly*, 322 Ill. App. 3d 905, 914-15 (2001). The defendant, in moving for a directed finding, admits the truth of the facts stated in the prosecution's evidence for purposes of the motion, and the trial judge does not pass upon the weight of the evidence or witness credibility in testing the sufficiency of the evidence to withstand a motion for a directed finding. *Id.* at 915. A motion for a directed finding in a criminal case presents a question of law, which is reviewed on appeal *de novo*. *Id.* at 917-18.

¶ 27    We reject defendant's attempt to apply the criminal trial directed finding standard to his postconviction evidentiary hearing. We also reject defendant's assertion that an appeal from a directed finding granted at a stage-three postconviction proceeding must be reviewed *de novo*.

¶ 28    "A proper standard of review cannot be articulated without first examining the substantive and procedural backdrop against which the appealed order or ruling arose." *Coleman*, 183 Ill. 2d at 378. Our supreme court has described the nature of actions brought under the Act as being "civil in character" and noted that postconviction proceedings are *sui generis* and the "remedy provided by the Act does not fall strictly into the category of either a criminal or civil proceeding." (Internal quotation marks omitted.) *People ex rel. Daley v. Fitzgerald*, 123 Ill. 2d 175, 181 (1988); see also *People v. Ligon*, 239 Ill. 2d 94, 103 (2010). Because postconviction proceedings are civil in nature, courts may enter orders in postconviction proceedings as are "generally provided in civil cases." See 725 ILCS 5/122-5 (West 2014). Accordingly, a court presiding over a postconviction proceeding can apply the provisions of the Code of Civil Procedure (Code) (735 ILCS 5/1-101 *et seq.* (West 2014)) unless those provisions conflict with the Act, and the Code can be looked to for guidance if the Act is silent concerning a procedural matter. *People v. Harris*, 2016 IL App (1st) 141778, ¶ 16; *People v. English*, 381 Ill. App. 3d 906, 909-10 (2008).

¶ 29    Section 2-1110 of the Code provides that a defendant in a civil bench trial case may move at the close of the plaintiff's case for a finding or judgment in the defendant's favor, and the court must weigh the evidence, considering witness credibility and the weight and quality of the evidence, in ruling on the motion. 735 ILCS 5/2-1110 (West 2014). The purpose of section 2-1110 of the Code is to allow the judge in a nonjury trial to assess the nonmovant's proof and find in favor of the movant if the nonmovant failed to make out a *prima facie* case. *Margolies v. Landy & Rothbaum*, 136 Ill. App. 3d 635, 639 (1985). The Act is silent about motions for directed findings, and we find that the provisions of section 2-1110 of the Code do not conflict with the Act's provisions for third-stage evidentiary hearings, during which the court may make credibility determinations to decide whether the defendant showed, by a preponderance of the evidence, a substantial violation of a constitutional right. Accordingly, courts presiding over postconviction proceedings do not err by applying section 2-1110 of the Code as guidance when considering the State's motion for a directed finding at a third-stage evidentiary hearing.

¶ 30    Under the Code, a court ruling on a motion for a directed finding in a nonjury trial must (1) determine as a matter of law whether the nonmovant has presented a *prima facie* case

(some evidence on every element essential to the cause of action) and (2) if so, consider and weigh the totality of the evidence presented, including evidence favorable to the movant. *Zannini v. Reliance Insurance Co. of Illinois, Inc.*, 147 Ill. 2d 437, 448-49 (1992); *527 S. Clinton, LLC v. Westloop Equities, LLC*, 403 Ill. App. 3d 42, 52 (2010). After weighing all the evidence, the court should determine, applying the standard of proof required for the underlying cause, whether sufficient evidence remains to establish the nonmovant's *prima facie* case. *527 S. Clinton, LLC*, 403 Ill. App. 3d at 52. If sufficient evidence necessary to establish the nonmovant's *prima facie* case remains following the weighing process, the court should deny the motion for a directed finding and proceed as if the motion had not been made. *Barnes v. Michalski*, 399 Ill. App. 3d 254, 263 (2010).

¶ 31        If the circuit court finds that the plaintiff fails to present a *prima facie* case as a matter of law, the standard of review is *de novo. People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 275 (2003). If, however, the circuit court considers the weight and quality of the evidence and finds that no *prima facie* case remains, the circuit court's decision will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Zannini*, 147 Ill. 2d at 449.

¶ 32        Here, the record establishes that defendant presented some evidence on every element of his claim of ineffectiveness of trial counsel and the circuit court, consistent with section 2-1110 of the Code, considered the credibility of the alibi testimony and weighed all the evidence before concluding that defendant failed to establish by a preponderance of the evidence a *prima facie* case of ineffectiveness of trial counsel. Consequently, we review the circuit court's ruling under the manifest weight standard. See *Hughes*, 329 Ill. App. 3d at 325 (a ruling is manifestly erroneous only if it contains error that is clearly evident, plain, and indisputable).

¶ 33        Defendant relies on the related cases *People v. Serrano*, 2016 IL App (1st) 133493, ¶¶ 23, 37, 41, and *People v. Montanez*, 2016 IL App (1st) 133726, ¶¶ 24, 34, 42, to support the propositions that an appeal from a directed finding granted at a third-stage postconviction proceeding must be reviewed *de novo* and all of the postconviction evidence must be viewed in a light most favorable to the postconviction petitioner. In *Serrano* and *Montanez*, the court simply stated those propositions without engaging in any substantive analysis concerning the civil nature of postconviction proceedings and the applicability of section 2-1110 of the Code of Civil Procedure instead of section 115-4 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-4(k) (West 2014)). We decline to follow *Serrano* and *Montanez* and conclude the circuit court did not err by making credibility determinations and considering and weighing the totality of the evidence presented, including evidence favorable to the State, when ruling on the State's motion for a directed finding at the third-stage evidentiary hearing.

¶ 34                              B. Ineffectiveness of Trial Counsel

¶ 35        Defendant argues the circuit court erred in denying him postconviction relief because he presented credible evidence establishing a claim of ineffective assistance of trial counsel. Defendant contends that even though the testimony of his three sisters was inconsistent on peripheral matters, their testimony was remarkably consistent on the key details: the date of the party, where defendant was during the party, its duration, his task at the party, and that the sisters made efforts to communicate the alibi to trial counsel but he failed to either respond or take action on the alibi.

¶ 36        A defendant alleging a claim of ineffective assistance of counsel must satisfy both prongs of the test discussed in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), which requires a

showing that "counsel's performance was deficient" and the deficient performance "prejudiced the defense." To satisfy the first prong, the defendant must show "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The second prong requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. If an ineffectiveness claim can be disposed of on the ground of insufficient prejudice, then that course should be taken, and the court does not need to consider the quality of the attorney's performance. *Id.* at 697.

¶ 37     In reviewing a claim of ineffective assistance of counsel, this court reviews counsel's actions under the totality of the circumstances of the individual case. *People v. Shatner*, 174 Ill. 2d 133, 147 (1996). Judicial scrutiny of counsel's performance is highly deferential, and counsel's trial strategy is given a strong presumption of reasonable professional assistance. *Strickland*, 466 U.S. at 689. To establish deficient performance, defendant must identify counsel's acts or omissions that allegedly are not the result of reasonable professional judgment and overcome the strong presumption that counsel's action or inaction was the result of sound trial strategy. *People v. Perry*, 224 Ill. 2d 312, 341-42 (2007); *Strickland*, 466 U.S. at 690. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. Defendant must show that counsel's errors were so serious and his performance was so deficient that he did not function as the counsel guaranteed by the sixth amendment. *Perry*, 224 Ill. 2d at 342.

¶ 38     Decisions regarding which evidence to present and which witnesses to call are matters of trial strategy (*People v. Hamilton*, 361 Ill. App. 3d 836, 847 (2005)), and counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary (*People v. Pecoraro*, 175 Ill. 2d 294, 324-25 (1997)). Where circumstances known to counsel at the time do not reveal a sound basis for further inquiry in a particular area, it is not ineffective for the attorney to forgo additional investigation. *People v. Orange*, 168 Ill. 2d 138, 150 (1995). Strategic choices made by counsel after having made a thorough investigation are "virtually unchallengeable." *People v. Towns*, 182 Ill. 2d 491, 514 (1998).

¶ 39     Here, the circuit court's finding—that trial counsel investigated the alibi testimony, which was weak, and made a reasonable strategic decision not to present it—was not against the manifest weight of the evidence. Defendant testified that he spoke with trial counsel several times about his alibi and gave counsel a list of the names and contact information of friends and family who could corroborate his alibi, including his sisters. Gail testified that she discussed the alibi with trial counsel at his office prior to the trial. Glynda testified that she spoke with trial counsel at the courthouse in the presence of her mother and sisters and that counsel told them to wait outside the courtroom and that they would testify. This evidence establishes that trial counsel knew of defendant's alleged alibi and the corroborating witnesses, knew what their testimony would be, and had alibi witnesses prepared to testify waiting outside the courtroom during defendant's trial.

¶ 40     During the State's case-in-chief, trial counsel cross-examined the State's witnesses and attacked their credibility. After the State rested, trial counsel made the strategic and virtually

unchallengeable decision not to call defendant's sisters based on counsel's assessment of the State's witnesses, their backgrounds, and the fact that they received benefits for testifying. It was not unreasonable trial strategy to decide not to present the alibi testimony of defendant's sisters because their close relationship to him could have resulted in their testimony carrying little weight with the jury. See *People v. Deloney*, 341 Ill. App. 3d 621, 635 (2003). Furthermore, their weak alibi testimony could have potentially harmed the defense's case. See *United States v. Guillette*, 547 F.2d 743, 752 (2d Cir. 1976) (recognizing "a danger likely to arise when jurors, untrained in the law, disbelieve alibi testimony and are inclined to view the failure of the defense as a sign of the defendant's guilt"); *United States v. Burse*, 531 F.2d 1151, 1153 (2d Cir. 1976) ("In those cases where an alibi defense is presented, there exists the danger that the failure to prove that defense will be taken by the jury as a sign of the defendant's guilt.").

¶ 41 The circuit court watched and listened to the sisters testify and concluded that their claims to have never lost sight of defendant at the large and lengthy family party between the precise hours of 3 to 5 p.m. on the date of the shooting were far-fetched and incredible. The circuit court found that Gabrielle was evasive in answering questions; Gail's testimony was inconsistent with information in her affidavit; and Glynda was evasive, defensive, flippant, and hostile. Based on our review of the record, we cannot say that the circuit court's credibility findings and conclusion that defendant's three sisters seemed to be engaged in a coordinated effort to create an alibi for their brother were against the manifest weight of the evidence.

¶ 42 Considering trial counsel's efforts to challenge the credibility of the State's occurrence witnesses, it was reasonable for trial counsel to decide not to jeopardize those efforts by presenting the sisters' unbelievable alibi testimony. Furthermore, because the alibi testimony was not credible, there was no reasonable probability that the outcome of defendant's trial would have been different if trial counsel had presented the sisters as witnesses. Accordingly, the circuit court's decision to grant the State's motion for a directed finding, based on defendant's failure to establish by a preponderance of the evidence a *prima facie* case of ineffectiveness of trial counsel, was not against the manifest weight of the evidence because, after weighing all the evidence, including evidence favorable to the State, the remaining evidence was not sufficient to make a *prima facie* showing that trial counsel's performance was objectively unreasonable or defendant was prejudiced by trial counsel's strategic decision.

¶ 43                                    III. CONCLUSION

¶ 44 For the above reasons, we affirm the judgment of the circuit court granting the State's motion for a directed finding at the third-stage evidentiary hearing and denying defendant postconviction relief.

¶ 45 Affirmed.