2022 IL App (1st) 192571-U

FIFTH DIVISION
Order filed: April 29, 2022

No. 1-19-2571

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|---|---|---|
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 05 CR 28760 |
| | ) | |
| MARQUETTE ANDERSON, | ) | Honorable, |
| | ) | James Dennis J. Porter, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Delort and Justice Connors concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirmed the third-stage denial of the defendant's postconviction petition where trial counsel's decision not to call several minors as alibi witnesses was a matter of trial strategy but reversed the second-stage dismissal of the defendant's claim that trial counsel should have used evidence of a plot to falsely identify him to cross-examine the State's identification witnesses and remand that claim to the circuit court with directions to advance the claim for a third-stage evidentiary hearing.

¶ 2    The defendant, Marquette Anderson, appeals from orders of the circuit court addressed to claims that he raised in his postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)), arguing that the circuit court erred: (1) in denying his

claim of ineffective assistance of counsel following a third-stage postconviction evidentiary hearing predicated on his trial attorney's failure to interview and call as witnesses three minor children in support of his alibi defense; and (2) in dismissing, at the second stage of the postconviction proceeding, his claim of ineffective assistance of counsel alleging that his trial attorney failed to call or question three witnesses in support of his theory of defense that one of the State's witnesses knowingly orchestrated his false identification as the individual who shot both victims. For the reasons that follow, we affirm in part, reverse in part, and remand the matter to the circuit court for further proceedings.

¶ 3    The following statement of facts is taken from the common law record and report of proceedings of the defendant's jury trial and postconviction proceedings.

¶ 4    The defendant was charged in a 14-count indictment with offenses including first degree murder, attempt first degree murder, aggravated battery with a firearm, and aggravated discharge of a firearm, arising from a November 25, 2005, shooting incident which resulted in the death of Michael Davis and Jackie Stiffend's injury. The matter proceeded to a jury trial in May 2007.

¶ 5    At trial, Mary Davis testified that her nephew, Michael Davis (Michael), was alive on November 25, 2005, and left her house in the early evening. When she next saw Michael, he was dead at a hospital where he had been taken after being shot.

¶ 6    Jackie Stiffend testified that he was in a fist fight with an individual he knew as "Ant" on November 22, 2005. Stiffend stated that he won the fight, but that as Ant was leaving, he said "you can't beat my bullets." He later learned that Ant's real name was Anthony Anderson. According to Stiffend, he was alone at the time of the fight, but Anderson was with several of his cousins. Stiffend testified that he knew Anderson because the mother of Anderson's child,

Makindra Watson[1] (Makindra), lived on the same block as him. Stiffend also stated that he had seen Anderson with a man he knew as "Tone" who he identified in court as the defendant.

¶ 7    Stiffend further testified that, on November 25, 2005, he was riding in a car in Chicago with his cousin, Michael, and his friends, Jarmal Clemons, Michael Thomas, and Marquis Betties. They needed gas and drove to a gas station where they saw Anderson. Stiffend added that, when they saw Anderson, they drove off, and Anderson followed them for some distance.

¶ 8    According to Stiffend, he and his companions had driven several blocks when they saw a parked car occupied by a man known as "Tuchie." Tuchie began to follow them in his car. Stiffend testified that he and his companions drove until they encountered a car blocking the street at the intersection of Carroll Avenue and Sacramento Boulevard. He stated that he saw the defendant get out of that car. According to Stiffend, Michael was driving the vehicle in which he was riding, and when he saw the defendant, he told Michael to "put it in reverse" but the car was stuck in neutral. Stiffend stated that he saw the defendant approach the driver's side of the car with a gun and began shooting. The defendant then went around the back of the car, stood near the passenger side, and attempted to fire more shots. Stiffend testified that he heard the gun click "like it was out of bullets or jammed." The defendant then got back into the car that was blocking the street, and the car drove away.

¶ 9    Stiffend testified that he was able to put the car in which he was riding in drive and take hold of the steering wheel. The car struck a pole and crashed into a wall. When Stiffend got out of the car, he noticed that his finger was broken and that he had been shot in the leg. According to Stiffend, Michael had been shot and was taken by ambulance to a hospital; he was taken by

---

[1] Makindra's name also appears as Mikendra in the report of proceedings.

ambulance to a different hospital. While at the hospital, he was shown a series of photos by police detectives, and he identified the defendant as the shooter. Stiffend stated that he also identified the defendant in a lineup after he was released from the hospital,

¶ 10    On cross-examination, Stiffend was asked whether he knew that the defendant, Anderson, and Tuchie were cousins before the police told him so. Stiffend denied knowing that the individuals were cousins. Stiffend also denied seeing Anderson, the defendant or Tuchie at Makindra's house. He denied hanging around Makindra, trying to "go with" her, or bothering her. Stiffend denied that his fight with Anderson was over Makindra.

¶ 11    Stiffend also denied that he was with Clemons and Betties when the police picked him up and took him to a police station to view a lineup.  Stiffend admitted that he, Clemons, and Betties were alone in a room at the police station for 30 minutes before the lineup but denied that they spoke to each other during that time; answering "yes" when asked if they remained absolutely silent for 30 minutes.

¶ 12    On redirect examination, Stiffend testified that, once before the shooting, he had seen the defendant on the block where he lived.

¶ 13    Clemons testified that, on November 25, 2005, he was riding in a car with Stiffend, Michael, Thomas and Betties when they approached the intersection of Carroll and Sacramento. Clemons stated that a man, whom he identified in court as the defendant, came "out of the blue" and began shooting at the car in which he and his companions were riding.  On November 26, 2005, Clemons identified the defendant as the shooter in a lineup.

¶ 14    On cross-examination, Clemons admitted being in a room at the police station with Betties, Thomas, and Stiffend before viewing the lineup.  He denied discussing whom they would identify

in the lineup. On redirect examination, Clemons testified that he identified the defendant in the lineup as the shooter because he recognized his face and not because Stiffend, Thomas or Betties told him to do so.

¶ 15 Betties testified that, on November 25, 2005, he was riding in a car with Stiffend, Clemons, Michael, and Thomas. Betties's description of the events of the shooting was consistent with the testimony of Clemons and Stiffend. However, Betties denied seeing the shooter in the courtroom. Betties admitted that he had previously given a statement to a police detective in which he named the defendant as the shooter and identified his photograph. Betties also admitted that he testified before a grand jury and named the defendant as the shooter.

¶ 16 The State presented forensic evidence indicating that the shell casings recovered at the scene were all fired from the same handgun, but that there was no forensic evidence tying those shell casings to the defendant.

¶ 17 The State rested.

¶ 18 Tamika Rainey appeared as a witness on behalf of the defendant. She testified that, in November 2005, she and the defendant were engaged and living in a house on Hamilton Avenue in Chicago with her four children. According to Rainey, the defendant got out of bed at 10 a.m. on November 25, 2005, and left the house at approximately 10:15 a.m. He returned at 11 a.m. and never left the house again that day.

¶ 19 On cross-examination, Rainey testified that there was nothing "physically wrong" that prevented the defendant from leaving the house. However, she later clarified that she thought physically wrong meant a broken bone and stated that the defendant was sick that day from food he had eaten the day before at Thanksgiving dinner.

¶ 20    The parties presented closing arguments, and the trial court instructed the jury. Following their deliberations, the jury found the defendant guilty of the first degree murder of Michael, and the aggravated battery with a firearm of Stiffend. Following a sentencing hearing, the circuit court sentenced the defendant to consecutive terms of 75 years' imprisonment and 10 years' imprisonment, respectively.

¶ 21    On direct appeal, the defendant argued that the trial court improperly admitted evidence of prior contact with the police and that his sentence was excessive. This court affirmed the defendant's conviction and sentence but corrected the fines and fees order. See *People v. Anderson*, No. 1-07-2237 (2009) (unpublished order under Supreme Court Rule 23).

¶ 22    On April 23, 2010, the defendant, acting *pro se,* filed a postconviction petition under the Act. After the circuit court appointed counsel to assist the defendant, he filed several *pro se* supplements to his petition and his appointed counsel also filed a supplemental petition. The defendant raised two claims that are relevant to this appeal.

¶ 23    First, the defendant argued that trial counsel was ineffective because he failed to investigate and call Rainey's minor children as alibi witnesses, asserting that they would have corroborated Rainey's testimony that he was home at the time of the shooting. The defendant supported the claim with affidavits from the children.

¶ 24    Second, the defendant argued that trial counsel was ineffective for failing to impeach Stiffend with evidence of a false identification. The defendant supported this claim with two written statements allegedly given to trial counsel before trial. In the first statement, Betties wrote that Stiffend showed him a picture of the defendant before the lineup and told him to identify the defendant as the shooter. Betties also wrote that he lied to the grand jury when identified the

defendant as the shooter because he was afraid. In the second statement, Thomas wrote that Stiffend showed him a "mug shot" of the defendant and told him to identify the defendant as the shooter. Thomas wrote that, despite not seeing the shooter at the scene of the crime, he picked the defendant out of the lineup because Stiffend told him to do so. Thomas also wrote that he lied to the grand jury when he identified the defendant because he was afraid he would get into trouble if he changed his story.

¶ 25    In addition, the defendant supported his postconviction petition with a transcript of the testimony given by Denise Watson during a witness intimidation trial of Anderson which was held after the defendant's trial.  According to the petition, the defendant's trial counsel also represented Anderson during the intimidation trial which arose out of an allegation that Anderson had attempted to intimidate Stiffend.  Denise testified that, while she was on the porch of her mother's house, she overheard Stiffend talking on a cell phone as he walked past the house, bragging that he had "Gotten [the defendant] caught up with a case."

¶ 26    Finally, the defendant alleged in a supplemental petition that he had informed trial counsel that Makindra told him that she overheard a conversation between Stiffend and her boyfriend in which Stiffend stated that "no one know who shot [Michael]" and "he was putting a case on [the defendant] because he did not like him." The record also contains an affidavit from Makindra, making the same allegations regarding Stiffend's statements.

¶ 27    The State moved to dismiss the defendant's postconviction petition at the second stage of the proceedings.  Thereafter, the defendant's postconviction counsel filed an amended petition adding another claim of ineffective assistance. The State filed an amended motion to dismiss,

arguing, *inter alia*, that the decision not to present Rainey's children as witnesses and the failure to impeach Stiffend were trial strategy.

¶ 28 On April 11, 2019, the circuit court entered a written order granting in part and denying in part the State's second-stage motion to dismiss. As relevant here, the circuit court denied the State's motion with regard to the issue of the children's testimony and granted the State's motion with regard to the impeachment of Stiffend. The circuit court set the matter for a third-stage evidentiary hearing on, *inter alia*, the claim that trial counsel was ineffective for failing to call Rainey's children as witnesses. That hearing was held on November 18, 2019.

¶ 29 Dajanee Tate testified that the defendant is her stepfather. On November 25, 2005, she was 10 years old and lived with her mother and the defendant. She stated that it was the day after Thanksgiving, and the defendant was home all day because he was sick and vomiting.

¶ 30 Nwaja Tate testified that the defendant is her stepfather. She stated that, on November 25, 2005, she was eight years old and living with her mother and the defendant. The defendant was sick that day and throwing up "a lot." She added that the defendant never left the house that day.

¶ 31 Darshun Tate testified that the defendant is his stepfather. He stated that, on November 25, 2005, he was 12 years old. According to Darshun,, he and the defendant were "hanging out" that day and playing video games. He also testified that the defendant never left the house.

¶ 32 The defendant testified that Robert Smith represented him at trial. He stated that he and Smith discussed alibi witnesses including Rainey and her four children. According to the defendant, Smith "kind of brushed it off."

¶ 33 Smith testified that he had been a criminal defense attorney for 40 years and had tried over 100 murder cases. He admitted that he discussed an alibi defense with the defendant but did not

interview Rainey's minor children. He testified that he would not call the children as witnesses because:

> "[N]umber one, the information was cumulative, that essentially the children, whether it was three children or I'm not sure of the number, that they would corroborate the mother's testimony in that Marquette was at home at whatever the time in question, it was essentially corroborational so it would have been the same testimony two or three or four times and all the secondary witnesses were minor children and I've made that mistake before and it's my experience that if it's not necessary, you don't put on minor children for a number of reasons which I could go into if you want."

Smith continued, stating that the more an alibi is exposed to cross examination the "softer" the alibi becomes. He also stated that children are subject to cross-examination questions like "did you and mommy discuss this?" Smith added that it was a risk reward analysis based on whether each witness brought new information or "just baggage."

¶ 34 On cross-examination, Smith testified that he did not call Makindra to testify about Stiffend bragging about getting the defendant "caught up with a case" because he talked to her four times and she "never told it the same way twice." Smith also testified that he did not believe that her testimony would have "evidentiary value" because it was ambiguous.

¶ 35 Following closing argument by the parties, the court held, in relevant part, that Smith's decision not to call Rainey's minor children as witnesses was a matter of trial strategy and, based on that finding, denied the defendant's petition for postconviction petition relief. This appeal followed.

¶ 36    As a preliminary matter, we note that the circuit court entered a second stage dismissal of some, but not all, of the claims in defendant's postconviction petition as supplemented, allowing some claims to proceed to a third-stage evidentiary hearing. We find nothing improper about entering a partial dismissal at the second stage of a postconviction proceeding. *People v. Lara*, 317 Ill. App. 3d 905, 908 (2000).

¶ 37    For his first assignment of error, the defendant contends that the circuit court erred when, following the third-stage evidentiary hearing, it held that Smith's the decision not to call Rainey's children as witnesses was a matter of trial strategy and for that reason denied his postconviction petition.

¶ 38    The Act provides a procedure whereby a person in the penitentiary may assert that his conviction was the result of a violation of the federal or state constitution. 725 ILCS 5/122-1 *et seq*. (West 2020); see also *People v, Ruddock*, 2022 IL App (1st) 173023, ¶ 44. Proceedings under the Act are a collateral attack on a final judgment; they are not a substitute for a direct appeal. *People v. Edwards*, 2012 IL 111711, ¶ 21. Proceedings under the Act have three stages. *Ruddock*, 2022 IL App (1st) 173023, ¶ 44. If a postconviction petition survives summary dismissal at stage one and is not dismissed on the State's motion at stage two, the circuit court conducts a stage-three evidentiary hearing. *Id.* At an evidentiary hearing, the defendant must establish by a preponderance of the evidence that he suffered a substantial deprivation of his constitutional rights. *People v. Coleman*, 2013 IL 113307, ¶ 92 (citing *People v. Stovall*, 47 Ill. 2d 42, 47 (1970)).

¶ 39    When, as in this case, a defendant alleges ineffective assistance of counsel, we apply the two-prong test articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Velasco*, 2018 IL App (1st) 161683, ¶ 138. A defendant must establish that (1) trial

counsel's representation fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *People v. Enis*, 194 Ill. 2d 361, 376 (2000) (citing *Strickland*, 466 U.S. at 694); see also *People v. Domagala*, 2013 IL 113688, ¶ 36. "A reasonable probability is a probability sufficient to undermine confidence in the outcome, namely, that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair." *Enis*¸ 194 Ill. 2d at 376. A defendant must also overcome the strong presumption that any challenged action or inaction may have been the product of trial strategy. *People v. Dupree*, 2018 IL 122307, ¶ 44. The failure to satisfy either prong of the *Strickland* test is fatal to a defendant's claim. *Enis*¸ 194 Ill. 2d at 377.

¶ 40 Decisions regarding what evidence to present and which witnesses to call to present that evidence are matters of trial strategy. *People v. Williams*, 2017 IL App (1st) 152021, ¶ 38. Counsel has a duty to make reasonable investigations or to make a reasonable decision that an investigation into a particular source of evidence is unnecessary. *Id.* (citing *People v. Pecoraro*, 175 Ill. 2d 294, 324-25 (1997)). If an attorney has made a thorough investigation of the law and facts, then his or her strategic choices are "virtually unchallengeable." *People v. Towns*¸ 182 Ill. 2d 491, 514 (1998).

¶ 41 Claims of ineffective assistance of counsel generally involve mixed questions of law and fact. *Velasco*, 2018 IL App (1st) 161683, ¶ 137. Accordingly, we will disturb the circuit court's factual findings only if they are against the manifest weight of the evidence but will review *de novo* the ultimate determination of whether the defendant was denied the effective assistance of counsel. *Id.*

¶ 42 At the third-stage evidentiary hearing in this case, Smith admitted that he did not investigate further into the potential testimony of Rainey's children because he did not intend to

call the minor children to testify. He reasoned that their alibi testimony would be cumulative of their mother's testimony, their stories may vary, and they could be perceived as having been coached. Smith also testified that he believed the strength of alibi testimony can be diluted when presented by multiple witnesses because it is subject to repeated cross-examination. Smith's testimony clearly established that his decision not to further investigate the testimony of the minor children or call them as witness was the product of a trial strategy. In *Strickand*, the Supreme Court held that once it established that the decisions of trial counsel were the product of trial strategy they are entitled to deference, and questions of trial strategy are virtually unchallengeable. See *Strickland*, 466 U.S. at 690-91 ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.") The credibility of Smith's testimony was a matter for the trial court to determine. It is obvious from the record that the trial court credited Smith's testimony relating to his reasons for not calling Rainey's children when it found that Smith's decision was one of trial strategy. We are unable to find that Smith's strategy on this issue was irrational. We conclude, therefore, that the defendant failed to establish that he suffered a substantial deprivation of his constitutional right to effective assistance of counsel and affirm the trial court's third-stage denial of the defendant's postconviction claim arguing that his trial counsel was ineffective for failing to call Rainey's minor children as alibi witnesses.

¶ 43    Next, we address the defendant's argument that the trial court erred when it entered a second-stage dismissal of the claim that trial counsel was ineffective for failing to use Betties statement that Stiffend told him to identify him as the shooter to impeach Stiffend's identification

testimony and to impeach Betties's own grand jury identification testimony; and failing to call Betties and Thomas to testify that Stiffend told them whom to identify him as the shooter; and failing to call Makindra to testify to the conversation she overheard where Stiffend said no one knew who killed Michael. In support of the dismissal of the claim, the State argues that the choices of what evidence to present and how to cross-examine a witness are generally matters of trial strategy.

¶ 44     To survive a motion to dismiss at the second stage of postconviction proceedings, a petition must make a "substantial showing" that the defendant's rights have been violated. *Dupree*, 2018 IL 122307, ¶ 29. At the second stage, all well pleaded facts that are not positively rebutted by the record are taken as true. *People v. Willingham*, 2020 IL App (1st) 162250, ¶ 21 (citing *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006)). To establish ineffective assistance of counsel, a defendant must overcome the strong presumption that the challenged action was the product of trial strategy. *Dupree*, 2018 IL 122307, ¶ 44. Decisions about which witnesses to call and which evidence to present are generally matters of trial strategy which will not support a claim of ineffective assistance of counsel unless trial counsel utterly fails to subject the State's case to adversarial testing. See *People v. Perry*, 224 Ill. 2d 312, 355-56 (2007). We review the second-stage dismissal of a postconviction petition *de novo*. *Willingham¸* 2020 IL App (1st) 162250, ¶ 21.

¶ 45     Initially, the State argues that the defendant has forfeited portions of his argument because they constitute "new" claims on appeal. See *People v. Brown¸* 2021 IL App (1st) 180991, ¶ 52. The State contends that, in his supplemental petition, the defendant argued only that his trial counsel failed to cross-examine Stiffend with evidence that Betties and Thomas had given statements indicating that he had told them to identify the defendant as the shooter, not that trial

counsel should have called Betties and Thomas as witnesses. However, we note that the supplemental petition prepared with the assistance of counsel used the term "impeach" not the narrower term "cross-examine." We are bound to take the allegations of a postconviction petition as true and construe them liberally. See *People v. Allen*, 2015 IL 113135, ¶ 25. Therefore, we will consider the defendant's arguments.

¶ 46    In this case, the defense theory was, *inter alia,* that the identification witnesses had conspired to "put a case on" the defendant.  Defense counsel supported this theory of the case by cross-examining the identification witnesses on the issue of whether they had time to discuss the identification of the defendant prior to the lineup and whether Stiffend had instructed them as to whom to identify as the shooter. The defendant argued in his postconviction petition that trial counsel should have used additional available evidence to impeach his identification as the shooter. Specifically, the defendant argues that Betties grand jury identification should have been impeached with his written statement that Stiffend told him who to identify. The defendant argued that trial counsel should have called Thomas as witnesses and used his testimony  to attack Stiffend's credibility and provide evidence of a coordinated fabrication. Finally, the defendant argued that trial counsel should have called Makindra to testify that she overheard Stiffend saying that "no one" knew who killed Davis and that he was "putting a case" on the defendant.

¶ 47    First, we address the defendant's argument that trial counsel should have used Betties' statement to impeach Betties' identification of the defendant as the shooter at the grand jury. Although Betties did not identify the defendant at trial, he did admit to previously naming him as the shooter during the grand jury proceedings.  The defendant argues that allowing this testimony to stand unchallenged was professionally unreasonable. We  agree .  Cross-examining Betties

based on his prior statement that Stiffend told him to identify the defendant would have challenged the evidence that Betties accurately named the defendant as the shooter when testifying before the grand jury. Although we recognize that it is possible that trial counsel had a legitimate reason for refraining from this line of cross-examination, we are limited at this stage of the proceedings to an examination of the defendant's petition and the record of the proceedings below. *Willingham*, 2020 IL App (1st) 162250, ¶ 21. We find that there is nothing in the record supporting trial counsel's decision to forego cross-examining Betties with his prior statement.

¶ 48 The defendant also argues that trial counsel should have called Thomas as a witness and used the statements of Betties and Thomas to attack Stiffend's identification testimony. Construed liberally, we presume that the defendant is arguing that Stiffend should have been impeached with prior inconsistent statements made to Betties and Thomas and that their testimony could be used to perfect that impeachment. Assuming, as we must, that Betties and Thomas would have testified consistently with their statements which the defendant alleged that he provided to his trial counsel, we find nothing in the record which suggests a strategic reason not to attempt impeach Stiffend's identification of the defendant with evidence of his prior inconsistent statements.

¶ 49 With regard to the failure to call Makindra as a witness to impeach Stiffend, the allegations in the defendant's postconviction petition are adequate to make a substantial showing that counsel's performance fell below reasonable professional standards. The petition alleged that the defendant told trial counsel that Makindra was available as a witness and relayed the substance of her testimony to him. Assuming, as we must, that Makindra would have testified that she heard Stiffend say that "no one" knew who shot Michael and that Stiffend was "putting a case on" the defendant, this evidence could have similarly been used to perfect impeachment of Stiffend's

identification of the defendant as the shooter. We find nothing in the record supporting the conclusion that the failure to call Makindra as a witness was a matter of sound trial strategy.

¶ 50    The State argues that the statements by Betties and Thomas were not exculpatory; rather, their statements actually bolster Stiffend's identification of the defendant. We find no merit in the argument. The statements, which indicated that Stiffend told Betties and Thomas who to identify, must, at this stage, be read in conjunction with Makindra's allegation that Stiffend said "no one" knew who shot Michael and he was "putting a case" on the defendant. The clear implication of "putting a case on" the defendant is that Stiffend was falsely identifying the defendant as the shooter when "no one" could identify the actual offender. The State argues that, when Stiffend said that "no one" knew who killed Michael, he actually meant no one but himself. We find nothing in the record to support this interpretation, especially in light of Stiffend's alleged statement that he was "putting a case on" the defendant, implying that he was falsely implicating the defendant. We find nothing in the record which supports a second-stage finding that the failure to attack the identification of the defendant as the shooter with the testimony of Betties and Thomas consistent with their statements and the testimony of Makindra was the product of sound trial strategy.

¶ 51    We cannot conclude that the record affirmatively rebuts a finding that the defendant was prejudiced by the failure to use Betties' statement as impeachment or to call Thomas and Makindra as witnesses. No physical evidence tied the defendant to the crime. We believe that there was a reasonable possibility that the outcome of the trial would have been different if the State's identification  witnesses were impeached.

¶ 52    Based upon the foregoing analysis, we conclude that circuit court erred when, at the second stage of postconviction proceedings, it dismissed the defendant's claim of ineffective assistance

of trial counsel by failing to attack Betties's grand jury identification of the defendant as the shooter with his written statement and failing to call Thomas and Makindra as witnesses to attack Stiffend's identification of the defendant as the shooter. Therefore, we reverse the judgment of the circuit court dismissing this claim at the second stage of proceedings and remand this matter to the circuit court with directions to conduct a third stage evidentiary hearing on this claim of ineffective assistance of counsel.

¶ 53    Affirmed in part, reversed in part, and remanded with directions.