2020 IL App (1st) 162250

SIXTH DIVISION
November 6, 2020

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

No. 1-16-2250

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 95 CR 20771 |
| | ) | |
| EDWARD WILLINGHAM, | ) | Honorable |
| | ) | Brian Flaherty, |
| Defendant-Appellant. | ) | Judge Presiding. |
| | ) | |

PRESIDING JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justices Cunningham and Harris concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a jury trial, Edward Willingham was convicted of the first degree murder of Shiquita Fleming and the attempted murder and aggravated battery with a firearm of Maurice Scott. These convictions were affirmed on direct appeal. *People v. Willingham*, 298 Ill. App. 3d 1164 (1998) (table) (unpublished order under Illinois Supreme Court Rule 23). Mr. Willingham filed a postconviction petition asserting claims of (1) actual innocence, (2) ineffective assistance of trial counsel, and (3) ineffective assistance of appellate counsel. The circuit court dismissed the petition at the second stage, finding Mr. Willingham failed to make a substantial showing of a constitutional violation. Mr. Willingham now challenges that dismissal. In our initial decision in

this case we affirmed. However, on a fully briefed petition for rehearing, wherein we also allowed Mr. Willingham to cite addition authority—*People v. Robinson*, 2020 IL 123849—arguing our supreme court rejected the "total vindication" standard we employed in our reasoning in rejecting his claim of actual innocence, we now reverse, in part, the circuit court's dismissal of Mr. Willingham's postconviction petition and remand for an evidentiary hearing on two of his three postconviction claims. On rehearing, we have determined that Mr. Willingham has made a substantial showing on his claim of actual innocence as well as his claim of ineffective assistance of trial counsel.

¶ 2                                        I. BACKGROUND

¶ 3     Mr. Willingham's convictions stem from a shooting that occurred at around 4:30 p.m. on June 20, 1995, in Chicago Heights. Albert Adams and Tyjuan Turner were charged as codefendants but are not parties to this appeal.

¶ 4     There was no question that on that day Mr. Willingham arrived at the scene where members of his gang—the Gangster Disciples—and a rival gang—the Four Corner Hustlers, or Solid Fours—were engaging in fist fights. Mr. Willingham also does not dispute that he fired shots at the rival gang members. His defense at trial was that he shot in self-defense. The State's witnesses claimed that Mr. Willingham and his codefendants were the only shooters and that Mr. Willingham shot at unarmed individuals.

¶ 5     Mr. Willingham testified that, on the date of the incident, he planned to go to Albert Adams's house to sell three guns to someone named "Spider." Mr. Willingham put the guns in a white plastic bag and got a ride from a friend named "Chewy" to the house. Mr. Willingham testified that when they arrived, no one was in front of the house and Spider's car was not there, so they drove to 435 Hickory Street in Chicago Heights, where Albert Adams's cousin lived, and

where Albert Adams frequently hung out.

¶ 6      Mr. Willingham testified that, as he approached the house, he noticed a large crowd of 30 to 35 people fighting in the driveway. He saw Albert Adams and Mr. Turner, also Gangster Disciples, pick up a third person who was knocked down. As they did so, "the crowd started reaching in." Mr. Willingham got out of the car a few houses away and put a gun in his waistband because he knew the street was Solid Four territory.

¶ 7      According to Mr. Willingham, Jermaine Fleming, a Solid Four member, approached him with four or five other men behind him and stated, "I got your a*** now." Mr. Willingham knew Jermaine Fleming to carry a gun and testified that he had recently been shot at by Jermaine Fleming. Mr. Willingham lifted his shirt and showed Jermaine Fleming that he had a gun in his waistband. Mr. Willingham then heard gunshots. Though Mr. Willingham did not see a gun in Jermaine Fleming's hands, he thought that the shots had come from either Jermaine Fleming or one of the men standing behind Jermaine Fleming. Mr. Willingham testified that he then took his gun from his waistband and shot at Jermaine Fleming, but his gun did not go off. He heard more shots and fled, dropping the bag containing the two guns he had hoped to sell.

¶ 8      Mr. Willingham testified that, as the crowd fled east down the street, he saw Jerrett McCullor, a Solid Four, chasing Albert Adams and Mr. Turner and firing a gun in their direction. Fearing that Albert Adams or Mr. Turner would be killed, Mr. Willingham fired his own gun at Mr. McCullor until he ran out of bullets.

¶ 9      Mr. Willingham testified that he and Mr. Turner then ran into Albert Adams's house and hid their guns in the basement. Mr. Willingham said he found out an hour later that Shiquita Fleming and Mr. Scott were shot during the incident. He voluntarily turned himself into the police 10 days later.

¶ 10     Seven members of the Solid Four gang testified in the State's case in chief: Japheth Harris, Livingston Hall, Willie Fleming, Jermaine Fleming, Mr. McCullor, Mr. Scott, and Joseph Fleming. Shirley Fleming—Shiquita Fleming's mother and Jermaine, Willie, and Joseph Fleming's aunt—was with her daughter when she was shot and also testified, as did another relative of the Flemings—Ida Ruffin—who was Joseph Fleming's cousin, and Gregorio Salinas, who lived on Hickory Street and watched the scene unfold from his driveway. The State's witnesses uniformly testified that it was only after the last fist fight had broken up and the crowd had started to disperse that Mr. Willingham drove up, exited his car, and pulled three guns from a white plastic bag, giving one to Albert Adams and one to Mr. Turner. According to these witnesses, the three men then shot, unprovoked, into the dispersing crowd, killing Shiquita Fleming and injuring Mr. Scott. The State's witnesses all testified that no one else was armed with guns that day. In addition, both Mr. McCullor and Jermaine Fleming specifically denied carrying or shooting a weapon that day. Mr. Salinas admitted, however, that he could not see people's hands who were walking or running away from the crowd and did not see Mr. McCullor at all. All of the State's witnesses were Solid Four members or related to Solid Four members except for Mr. Salinas, who lived in Solid Four territory.

¶ 11     Twenty-one spent nine-millimeter cartridge casings and two bullets were recovered from the scene. A bullet was also recovered from Shiquita Fleming's body and from Shirley Fleming's purse. An expert in firearm identification testified that the evidence was consistent with the firing of three to five different guns.

¶ 12     During the State's closing argument, it emphasized that Mr. Willingham's testimony and version of events was completely uncorroborated. In his own closing argument, Mr. Willingham's counsel questioned the trustworthiness of the State's witnesses, whom he argued were all affiliated

with the Solid Fours, including Shirley Fleming and Ms. Ruffin, who were both related to Jermaine, Willie, and Joseph Fleming.

¶ 13     The jury found Mr. Willingham guilty of first degree murder, attempted murder, and aggravated battery with a firearm. Mr. Willingham received consecutive sentences of 60 years for the murder and 30 years for the attempted murder, with the aggravated battery with a firearm charge merging with the attempted murder conviction.

¶ 14     Mr. Willingham appealed, arguing (1) the prosecutor's closing argument denied him due process by improperly shifting the burden of proof from the State to him and (2) the trial court committed sentencing errors. This court affirmed Mr. Willingham's convictions on direct appeal (*Willingham*, 298 Ill. App. 3d 1164) and our supreme court denied his petition for leave to appeal on February 3, 1999 (*People v. Willingham*, 182 Ill. 2d 570 (1999) (table) (unpublished order under Illinois Supreme Court Rule 23)).

¶ 15     Mr. Willingham filed a *pro se* postconviction petition in December 1999. The circuit court advanced the petition to the second stage and appointed counsel to represent Mr. Willingham. Counsel filed a supplemental petition alleging (1) Mr. Willingham was actually innocent based on an affidavit signed by Jacobi Adams stating that Jermaine Fleming was armed on the afternoon of June 20, 1995, and shot at Mr. Willingham first; (2) trial counsel was ineffective for not calling Robert Johnson, Gentry Johnson, and Tyrone Bennett as witnesses, who, according to their affidavits, would have testified that Mr. Scott, Mr. McCullor, and at least one other Solid Four member, Kevin Fleming, were armed with guns on the afternoon in question; and (3) appellate counsel was ineffective for failing to argue that the jury instructions were erroneous.

¶ 16     The State filed a motion to dismiss the petition, arguing that Mr. Willingham's claims of ineffective assistance of trial and appellate counsel were meritless and he had failed to make a

5

substantial showing of actual innocence. The court granted the motion to dismiss on July 31, 2015, and denied Mr. Willingham's motion to reconsider on August 12, 2016. Mr. Willingham filed a timely appeal, and on February 14, 2020, this court affirmed the dismissal. Mr. Willingham subsequently filed a petition for rehearing—which has been fully briefed—and a motion to cite additional authority, *People v. Robinson*, 2020 IL 123849. We granted both.

¶ 17                                  II. JURISDICTION

¶ 18    Mr. Willingham filed his timely notice of appeal on August 12, 2016. We have jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rule 606 (eff. Dec. 11, 2014) and Rule 651(a) (eff. Feb. 6, 2013), governing criminal appeals and appeals from final judgments in postconviction proceedings.

¶ 19                                   III. ANALYSIS

¶ 20    The Post-Conviction Hearing Act (Post-Conviction Act or Act) permits any imprisoned person to institute a proceeding asserting that "a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both" occurred during the proceeding which resulted in his or her conviction. 725 ILCS 5/122-1(a)(1) (West 2014). A postconviction action is a collateral attack on the criminal proceedings. *People v. Tate*, 2012 IL 112214, ¶ 8.

¶ 21    Postconviction proceedings are divided into three stages. *Id.* ¶ 9. A petition is dismissed at the first stage if it is "frivolous or patently without merit." *People v. Hodges*, 234 Ill. 2d 1, 10 (2009). If the petition passes that threshold, it moves to the second stage and counsel is appointed if the defendant is indigent. *Tate*, 2012 IL 112214, ¶ 10. The defendant must then make a substantial showing of a constitutional violation to progress to the third stage, where the circuit court conducts an evidentiary hearing. *Id.* At the second stage, "all well-pleaded facts that are not positively rebutted by the trial record are to be taken as true" (*People v. Pendleton*, 223 Ill. 2d 458,

473 (2006)) and it is therefore inappropriate for a court to make findings of fact or credibility determinations at this stage (*People v. Coleman*, 183 Ill. 2d 366, 385 (1998)). A second-stage dismissal of a defendant's petition is subject to *de novo* review. *People v. Brown*, 2015 IL App (1st) 122940, ¶ 44.

¶ 22    Mr. Willingham argues on appeal that the circuit court erred in finding that his postconviction petition did not make a substantial showing of (1) actual innocence based on newly discovered evidence that directly supported Mr. Willingham's claim of self-defense, (2) ineffective assistance of trial counsel for failing to call witnesses who would also have supported Mr. Willingham's version of events, and (3) ineffective assistance of appellate counsel for failing to challenge the Illinois Pattern Jury Instructions given in connection with the charges against him for attempted murder and aggravated battery with a firearm. We address each argument in turn.

¶ 23                              A. Actual Innocence

¶ 24    "Courts may consider a freestanding claim of actual innocence in a post-conviction proceeding if the claim is based on newly discovered, material, and noncumulative evidence that the defendant is innocent of the crime for which he has been tried, convicted, and sentenced." *People v. Harris*, 206 Ill. 2d 293, 301 (2002). Evidence is newly discovered if it "has been discovered since the trial and *** the defendant could not have discovered it sooner through due diligence." *People v. Ortiz*, 235 Ill. 2d 319, 334 (2009). Evidence is material if "it is probative of a question before the trier of fact" (*People v. Favors*, 254 Ill. App. 3d 876, 888 (1993)) and cumulative if it adds nothing to what was already before the jury (*Ortiz*, 235 Ill. 2d at 335). "A defendant is only entitled to relief on his claim of actual innocence if the evidence is of such conclusive character that it would probably change the result on retrial." *Harris*, 206 Ill. 2d at 301.

¶ 25    Mr. Willingham's postconviction claim of actual innocence rests on Jacobi Adams's affidavit, which Mr. Willingham claims is newly discovered eyewitness evidence that Jermaine Fleming possessed a weapon on June 20, 1995, and that Jermaine Fleming fired that weapon at Mr. Willingham before Mr. Willingham fired his own weapon. Jacobi Adams's affidavit states that he was driving around with Jermaine Fleming on June 20, 1995, and that he "knew Jermaine had a gun." He further averred that when they parked the car and got out "[Mr. Willingham] was walking up the street." According to Jacobi Adams:

> "I was trying to find out who was fighting but before I could, I saw Jermaine [Fleming] shoot at [Mr. Willingham]. I thought [Mr. Willingham] was hit [be]cause he almost fell down. I saw the bag [Mr. Willingham] was holding hit the ground and guns spilled out of the bag. [Mr. Willingham] shot back and everyone started to run."

¶ 26    Mr. Willingham argues this affidavit qualifies as newly discovered evidence because "there is no indication that either the State or Mr. Willingham was aware of Jacobi's existence until his March 31, 2000, affidavit was signed and notarized." Mr. Willingham is correct that there is no reference to Jacobi Adams in either side's answers to discovery, and the record provides us with no evidence that Mr. Willingham was aware of Jacobi Adams's existence prior to trial. *Cf. People v. Edwards*, 2012 IL 111711, ¶ 37 (affidavits providing an alibi for the petitioner were not newly discovered where the petitioner would have known who these witnesses were at the time of trial and petitioner's attorney never attempted to subpoena these witnesses). The State has presented no argument in its brief for why Jacobi Adams's affidavit should not qualify as newly discovered evidence—and similarly raises no arguments concerning materiality or cumulativeness—and we can think of none ourselves. See Ill. S. Ct. R. 341(h)(7), (i) (eff. Jan. 1, 2016) (the appellee's brief shall contain reasons supporting its contentions "with citation of the authorities and the pages of

8

the record relied on"); *Peet v. Bouie Construction, Inc.*, 268 Ill. App. 3d 18, 22 (1994) (disregarding issues raised but "not supported by relevant authority"). Jacobi Adams was an acquaintance of Jermaine, not Mr. Willingham, and Mr. Willingham had no reason to know Jacobi Adams was there that day, witnessed the shooting, or even existed at all. Accordingly, we find that Mr. Willingham has carried his burden of demonstrating that Jacobi Adams's testimony was "discovered since the trial and *** the defendant could not have discovered it sooner through due diligence." *Ortiz*, 235 Ill. 2d at 334.

¶ 27　We also agree with Mr. Willingham that Jacobi Adams's affidavit is material and noncumulative. As stated above, evidence is material when it is probative of a question of fact before the jury. *Favors*, 254 Ill. App. 3d at 888. Jacobi Adams's affidavit is clearly material as it is probative of whether Mr. Willingham shot his weapon in self-defense. Jacobi Adams's affidavit is also noncumulative. It corroborates Mr. Willingham's testimony and conflicts with the State's witnesses who testified that Mr. Willingham shot first and that no members of the Solid Four gang were armed. This is sufficient to satisfy the requirement that evidence be noncumulative. See *People v. Sparks*, 393 Ill. App. 3d 878, 886 (2009) (rejecting the State's argument that testimony was cumulative where the defendant and the newly discovered witness would both state that the defendant shot in self-defense, where the defendant and the State presented conflicting versions of the incident, and where the newly discovered testimony was that of "an uninvolved witness that supported defendant's testimony").

¶ 28　The remaining issue then, and the only one we focused on in our original decision, is whether Jacobi Adams's affidavit is "conclusive" enough to necessitate a third-stage postconviction hearing. In his petition for rehearing, Mr. Willingham directs our attention to our supreme court's recent decision in *Robinson*, 2020 IL 123849. In *Robinson*, our supreme court

clarified that the "conclusive character" of newly discovered evidence necessary to support a postconviction petition based on actual innocence does not mean that the new evidence must be entirely dispositive or completely exonerate the defendant but rather that the new evidence "place[ ] the trial evidence in a different light and undermine[ ] the court's confidence in the judgment of guilt." *Robinson*, 2020 IL 123849, ¶ 48. In light of its decision in *Robinson*, our supreme court has recently directed this court to vacate multiple judgments in cases where petitions for leave to appeal were pending and the issue on appeal was whether a colorable claim of actual innocence had been presented. See, *e.g.*, *People v. Miranda*, No. 1170218 (Ill. Sept. 30, 2020) (supervisory order). Given the opportunity, we find it prudent to consider *Robinson* here as well.

¶ 29    The State argues that *Robinson* does not help Mr. Willingham because *Robinson* concerned a first-stage dismissal of a successive postconviction, which only required the petitioner to demonstrate a "colorable claim" of actual innocence and not a "substantial showing" as was required for Mr. Willingham to survive the second stage of a postconviction proceeding. The State correctly points out that *Robinson* itself draws a distinction between the showing required to file a successive postconviction petition and the substantial showing required to survive the second stage. *Robinson*, 2020 IL 123849, ¶ 58. The court in *Robinson* said that the showing required for a successive postconviction petition falls between the first-stage pleading requirement for an initial petition and the second-stage requirement of a substantial showing. *Id.*

¶ 30    However, the import of *Robinson* is that the requisite "conclusive character" of new evidence of actual innocence does not mean that the evidence must be dispositive. Rather as the court explained:

> "Ultimately, the question is whether the evidence supporting the postconviction
>
> petition places the trial evidence in a different light and undermines the court's

10

confidence in the judgment of guilt. [Citation.] The new evidence need not be entirely dispositive to be likely to alter the result on retrial. [Citation.] Probability, rather than certainty, is the key in considering whether the fact finder would reach a different result after considering the prior evidence along with the new evidence." *Id.* ¶ 48.

¶ 31    In addition, and also pertinent to Mr. Willingham's case, in *Robinson*, our supreme court determined that the appellate court erred in finding "that the evidence in petitioner's supporting affidavits d[id] not satisfy the conclusive character element because it merely conflict[ed] with the evidence presented at trial." *Id.* ¶ 57. The court stressed that it "has never held that a request for leave to file a successive petition must be denied if the new evidence conflicts with the trial evidence." *Id.* As the court in *Robinson* reasoned, "[i]f the new evidence of innocence d[id] not contradict the evidence of petitioner's guilt at trial, the filing of the *** petition would be pointless, and the purpose of the Act would be rendered meaningless, which is a result that must be studiously avoided." *Id.*

¶ 32    These principles—that evidence of actual innocence need not be dispositive and that such evidence may support a showing of actual innocence even where it conflicts with the trial evidence—are what Mr. Willingham relies on here. It is the clarification of these principles by our supreme court in *Robinson* that has caused us to look at Mr. Willingham's postconviction petition in a different light.

¶ 33    We also find our recent decision in *People v. Woods*, 2020 IL App (1st) 163031, to be relevant here. In *Woods*, as in *Robinson*, this court recently found newly discovered evidence in the form of an affidavit sufficiently conclusive to establish a colorable claim of actual innocence where the defendant "consistently maintained" that he shot in self-defense and the affidavit corroborated this otherwise unsupported claim. We reasoned, "the factfinder [was] charged with

11

ascertaining the credibility of the witnesses and resolving conflicting accounts [and] this new evidence raise[d] the probability that the jury would find defendant acted in self-defense." *Id.* ¶ 53.

¶ 34 Both *Robinson* and *Woods* involved successive, rather than second stage, postconviction petitions. Our supreme court noted that: "a petitioner who requests leave to file a successive petition need not satisfy even the substantial showing burden to advance to the third stage—let alone the evidentiary burden to obtain a new trial after a third-stage hearing" (*Robinson*, 2020 IL 123849, ¶ 58) and cited cases in which newly discovered conflicting evidence was insufficient to carry a petitioner's burden of making the "substantial showing" required at the second stage. *Id.* ¶¶ 58-59 (citing *People v. Sanders*, 2016 IL 118123, ¶¶ 48, 52). In *Sanders*, for example, the newly discovered evidence was *positively rebutted* by autopsy evidence that demonstrated the victim was shot multiple times. *Sanders*, 2016 IL 118123, ¶¶ 48-55. However, as the supreme court has long recognized, absent such a positive rebuttal, we are not to make credibility findings at the second stage and must take the statements in an affidavit as true. *Pendleton*, 223 Ill. 2d at 473 ("all well-pleaded facts that are not positively rebutted by the trial record are to be taken as true" at the second stage); *Coleman*, 183 Ill. 2d at 385 (same). With this in mind, we find that the showing that Mr. Willingham has made in this case is substantial enough to warrant a third stage hearing.

¶ 35 The affidavit of Jacobi Adams, while not detailed, says that he was right there—in the car with Jermaine Fleming—and that Jermaine Fleming was armed on the afternoon of June 20, 1995. The affidavit also says that Jermaine Fleming shot at Mr. Willingham before Mr. Willingham fired his gun. This goes to the very heart of whether Mr. Willingham shot in self-defense and, if believed, certainly "places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt." Robinson, 2020 IL 123849, ¶ 48. Just as in *Woods*, Mr. Willingham provided newly discovered evidence that corroborated his consistent claim—that he

shot only in response to life-threatening force. Further, the conflicting trial testimony was almost all from members of a rival gang or their family. Because it is not the court's role to assess the relative credibility of witness testimony at this stage of the postconviction proceeding, we find that Mr. Willingham has made a substantial showing of actual innocence.

¶ 36　We are also convinced on rehearing that the fact that Mr. Willingham entered the conflict with a gun does not deprive him of a possible claim of self-defense. Mr. Willingham correctly stresses that there is no duty to retreat in Illinois if one is not the initial aggressor. See *People v. White*, 265 Ill. App. 3d 642, 651 (1994) ("it has long been the law in Illinois that a person who is not the initial aggressor has no duty to retreat"). According to Jacobi Adams's affidavit and Mr. Willingham's own testimony, he was not the initial aggressor. If the jury were to believe this it could find that Mr. Willingham was justified in using deadly force to protect himself from deadly force asserted against him in the first instance. 720 ILCS 5/7-1(a)-(b) (West 2016) ("A person is justified in the use of force" which is "intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another" as long as the person was not the "aggressor"). We are also convinced on rehearing that self-defense would be relevant to the state's accountability theory because, as Mr. Willingham argues, "[a]n accountable defendant who promotes or facilitates a crime by another in the belief that self-defense is necessary is not culpable at all." *People v. Jones*, 2016 IL App (1st) 141008, ¶ 34.

¶ 37　At the second stage of a postconviction petition, the defendant must make a substantial showing of actual innocence. Mr. Willingham has presented evidence that corroborates his testimony at trial that Jermaine Fleming shot at him first and he shot back in self-defense. Jacobi Adams's affidavit places the trial evidence in a different light and undermines this court's

13

confidence in the judgment of guilt. *Robinson*, 2020 IL 123849, ¶ 48. While the affidavit conflicts with other trial testimony, it is not positively rebutted by any evidence in the record, and this is not the stage at which the court should resolve that conflict by making a credibility determination. *Sanders*, 2016 IL 118123, ¶ 42. Based on the newly discovered evidence, Mr. Willingham has made a substantial showing of actual innocence and his postconviction petition should be remanded for a third stage evidentiary hearing on that issue, where such credibility determinations can and should be made.

¶ 38                    B. Ineffective Assistance of Counsel

¶ 39    Mr. Willingham also argues that both his trial and appellate counsel were ineffective. A defendant is guaranteed the right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. art. I, § 8. Counsel is ineffective when he or she performs deficiently and there is a reasonable probability that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *People v. Albanese*, 104 Ill. 2d 504, 526 (1984) (adopting the *Strickland* standard in Illinois); *People v. Caballero*, 126 Ill. 2d 248, 269 (1989) (applying the *Strickland* standard to appellate counsel).

¶ 40    Counsel's performance is deficient when it falls below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Further, "[m]atters of trial strategy are generally immune from claims of ineffective assistance of counsel." *People v. Smith*, 195 Ill. 2d 179, 188 (2000). Counsel's performance is prejudicial when "there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Domagala*, 2013 IL 113688, ¶ 36 (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

¶ 41                                1. Trial Counsel

¶ 42    Mr. Willingham argues that his trial counsel was ineffective for failing to call three witnesses who would have corroborated his testimony that he acted in self-defense. The affidavits that Mr. Willingham has provided from those three witnesses all corroborate Mr. Willingham's claims that Solid Four members were armed that day.

¶ 43    According to his affidavit, if Robert Johnson was called to testify, he would state that he saw a fight break out between a member of the Gangster Disciples and a member of the Solid Fours and that other gang members from both sides joined the fight; however, the Gangster Disciples were outnumbered. He attempted to leave the area, but Mr. Scott, Mr. McCullor, and a third member of the Solid Four gang—who were all armed—blocked his car. According to Robert Johnson, Jermaine Fleming and other Solids Fours also threw rocks at his car as he tried to leave.

¶ 44    According to his affidavit, Gentry Johnson would testify that he was at a playground near 435 Hickory Street when he was "jumped" by members of the Solid Four gang, including Mr. Scott and Kevin Fleming, who were armed. He escaped the scene when Robert Johnson picked him up in a car. Robert and Gentry Johnson both left the scene before the shooting started.

¶ 45    According to his affidavit, Mr. Bennett would testify that he was at 435 Hickory Street with four other Gangster Disciples when a large crowd of Solid Fours approached. Mr. Bennett attested that Mr. Scott, who was armed at the time, asked him to fight a Solid Four one-on-one. Mr. McCullor was also present and armed. The fight soon became a free-for-all, and Mr. Bennett was on the ground being attacked when he heard shots fired. He did not see who was shooting.

¶ 46    Mr. Willingham argues that the testimony of these additional witnesses would have corroborated his own version of events that—contrary to the accounts of the State's witnesses, who were all Solid Fours, family members of Solid Fours, or lived in Solid Four territory—

15

members of the Solid Four gang were armed and were the initial aggressors. If a jury were to hear that evidence, Mr. Willingham argues, it is reasonably probable that the outcome of the trial would be different.

¶ 47    We first analyze whether counsel's performance fell below "an objective standard of reasonableness." *Id.* at 688. Here, the State presented unrebutted evidence—save for Mr. Willingham's own testimony—that no Solid Fours were armed on June 20, 1995. Capitalizing on this fact, the State stressed in its closing argument that Mr. Willingham's testimony was uncorroborated. As stated above, "[m]atters of trial strategy are generally immune from claims of ineffective assistance of counsel" (*Smith*, 195 Ill. 2d at 188), and the decision to call a witness is generally a matter of trial strategy (*People v. Enis*, 194 Ill. 2d 361, 378 (2000)). While "[s]uch decisions enjoy a strong presumption that they reflect sound trial strategy, rather than incompetence," "[t]his is not the case *** where counsel's strategy was so unsound that no meaningful adversarial testing was conducted." *Id.*

¶ 48    This court has found, in a number of cases, that the failure of trial counsel to call a witness who would contradict the State's evidence and support the defense reflects deficient performance. See, *e.g.*, *People v. Ramirez-Lucas*, 2017 IL App (2d) 150156, ¶ 44 (petition raised an arguable claim of ineffective assistance where trial counsel failed to investigate and call to testify three witnesses that would have corroborated the defendant's otherwise unsupported claim of self-defense); *People v. Makiel*, 358 Ill. App. 3d 102, 107-08 (2005) ("[f]ailure to present available witnesses to corroborate a defense has been found to be ineffective assistance"); *People v. Butcher*, 240 Ill. App. 3d 507, 510 (1992) (finding trial counsel's failure to call two witnesses that would "corroborate and buttress" the defendant's testimony was not a reasonable trial strategy); *People v. Skinner*, 220 Ill. App. 3d 479, 485 (1991) (finding trial counsel's "failure to call witnesses who

would support an otherwise uncorroborated defense to be ineffective assistance of counsel"). Further, "[w]hen the record is unclear concerning whether trial counsel's decision not to call exculpatory witnesses was a matter of trial strategy incompetence, the defendant is entitled to a postconviction evidentiary hearing on that issue." *People v. Cabrera*, 326 Ill. App. 3d 555, 564-65 (2001); see also *People v. Johnson*, 2019 IL App (1st) 153204, ¶ 46 (finding that where the record contained no strategic reason for trial counsel's decision, the petition should advance to a third-stage evidentiary hearing because the trial court was "in a better position to review whether counsel provided effective assistance of counsel" (internal quotation marks omitted)). In this case, as in the cases cited above, Mr. Willingham's trial counsel did not call witnesses who claim they would have supported Mr. Willingham's self-defense narrative, and the record does not reflect any rationale for this failure. Counsel may be able to provide a tactical explanation for this decision, but a question is certainly raised that would require an evidentiary hearing to resolve.

¶ 49 Trial counsel's deficient performance supports a claim of ineffective assistance only if the defendant was prejudiced by it. *Domagala*, 2013 IL 113688, ¶ 36. To move forward to an evidentiary hearing, Mr. Willingham must also make a substantial showing that there is a "reasonable probability" that the additional testimony would have changed the outcome of the trial. *Id.*

¶ 50 If these three witnesses had testified, the jury would have been told that Mr. Willingham did not approach an unarmed crowd that had been engaging in fistfights but rather approached an armed rival gang in their territory. Moreover, these witnesses would have called into question the uniform story told by members of the Solid Four gang and their family that Mr. Willingham, Albert Adams, and Mr. Turner were the only shooters that day and that the shots Mr. Willingham fired were unprovoked. It is clear this testimony would have provided critical support for Mr.

17

Willingham's otherwise completely uncorroborated version of events and would have changed the nature of the scene at 435 Hickory Street when Mr. Willingham approached as it was described to the jury.

¶ 51    The State argues that a showing of reasonable probability is foreclosed by the fact that, on direct appeal, we noted that "there was overwhelming evidence against defendant." *Willingham*, 298 Ill. App. 3d 1164, slip order at *3. The State also argues that the proposed testimony "cannot directly account for why [Mr. Willingham], or codefendants [Mr.] Turner and [Albert] Adams, fired the guns" because two of the potential witnesses were not even at the scene when the shooting started, and the third could not see who was shooting. The State also notes that the physical evidence corroborates its case and that Robert and Gentry's affidavits conflict.

¶ 52    The State's reasoning is unconvincing. First, this court's determination that "there was overwhelming evidence against defendant" was based on the trial record, which contained Mr. Willingham's lone testimony claiming to have acted in self-defense against armed Solid Fours. The fact that Mr. Willingham's testimony was uncorroborated at trial should not operate to bar corroborating evidence in a postconviction petition in this case. Second, while the State is correct that the affidavits cannot "directly" account for why Mr. Willingham shot his gun and do not therefore unilaterally resolve the question of whether he shot in self-defense, they nevertheless directly conflict with the State's witnesses who testified that no Solid Fours were armed. The affidavits also specifically corroborate Mr. Willingham's claim that Mr. McCullor was armed that day, which Mr. McCullor denied on the stand. Mr. Willingham testified he only shot at Mr. McCullor because Mr. McCullor was shooting at Albert Adams and Mr. Turner. Finally, while the State is correct that the physical evidence—cartridge casings and bullets recovered from the scene—corroborates the testimony of the State's witnesses, it also corroborates Mr. Willingham's

account. The expert in firearm identification testified that the evidence was consistent with the firing of three *to five* different guns. We also reject the State's argument that because both Robert Johnson and Gentry Johnson were in the same car, but only Robert Johnson testified that Mr. McCullor had a gun, their testimony is conflicting and "problematic." According to their affidavits, the two men were in a car attempting to escape multiple assailants who were trying to block them from leaving. That only one of the two mentioned seeing that Mr. McCullor was armed during this exchange does not make the testimony problematic or conflicting.

¶ 53    In support of its argument that Mr. Willingham cannot make the necessary showing of prejudice from the failure to call these three witnesses, the State cites *People v. Brown*, 2015 IL App (1st) 122940, ¶ 16, where the defendant was convicted of unlawful use of a weapon by a felon after a police officer watched him drop a gun into bushes after she told him to get down on the ground. In *Brown*, a single witness testified, in contrast with the officer's testimony, that the defendant did not have a weapon that day and it was another man who dropped the weapon in the bushes. *Id.*¶ 12. The defendant argued in his postconviction petition that his trial counsel was ineffective for failing to call four other witnesses who would have corroborated that witness's testimony. *Id.* ¶ 24. The court found the defendant could not meet the prejudice prong of *Strickland* because the testimony of none of the proposed witnesses conflicted with the trial testimony by definitively stating that the defendant was not holding a gun and the testimony was cumulative to the testimony heard at trial. *Id.* ¶¶ 57-59, 61. That is not the case here. The affidavits directly contradict the State's witnesses, who claimed that the Solid Fours were unarmed, and are not cumulative but rather add further evidence that members of the Solid Four gang were, as Mr. Willingham has always maintained, armed and acting as the initial aggressors in the encounter that led up to the shooting.

¶ 54    We find *People v. Gordon*, 2016 IL App (1st) 134004, which the State cites as additional support, similarly distinguishable. In *Gordon*, trial counsel "promised" in opening arguments that the defendant would testify, however, the defendant did not testify. *Id.* ¶ 1. On direct appeal, the court analyzed the defendant's claim of ineffective assistance of counsel under both prongs of *Strickland*, finding there was no deficient performance because the "defendant simply changed his mind and chose not to testify" and such a showing was made in the record. *Id.* ¶¶ 41-43. Likewise, the court found no prejudice, noting that the defendant's claim was based on "speculation" and *Strickland* requires "actual prejudice." *Id.* ¶ 46. However, the prejudice here is far from speculative: the proposed testimony corroborates Mr. Willingham's own testimony that members of the Solid Four gang were armed that day and contradicts the testimony of all of the State's witnesses that Mr. Willingham starting shooting at a group of unarmed people.

¶ 55    While numerous cases that Mr. Willingham cites concern affidavits of witnesses whose testimony provided more complete factual support of the defendants' theories (see, *e.g.*, *Johnson*, 2019 IL App (1st) 153204, ¶¶ 44-48 (substantial showing of ineffective assistance for failing to call as a witness a person who would have testified that the defendant was not shooter); *Makiel*, 358 Ill. App. 3d at 109 (substantial showing of ineffective assistance where trial counsel failed to interview or subpoena a witness who would have testified the defendant was not at the crime scene); *People v. Morris*, 335 Ill. App. 3d 70, 84-85 (2002) (substantial showing of ineffective assistance where trial counsel failed to investigate alibi witnesses, advise the State of alibi witnesses, and ultimately present alibi witnesses at trial)), we nevertheless find that the same reasoning applies here. Just as in those cases, Mr. Willingham testified to an otherwise uncorroborated version of events, and just as in those cases, the proposed testimony would have conflicted with the State's theory of the case and supported the defendant's.

¶ 56    The State is correct that the affidavits do not directly provide support to Mr. Willingham's testimony that Jermaine shot first and Mr. Willingham only shot in self-defense. But the affidavits would provide direct support of other elements of Mr. Willingham's testimony, namely that Solid Fours were armed that day, and it is this evidence that would indirectly support Mr. Willingham's theory of self-defense. Where the jury was largely presented with the one-sided testimony of individuals affiliated with the Solid Four gang at trial, we find that Mr. Willingham has made a substantial showing that there is "[a] reasonable probability *** sufficient to undermine confidence in the outcome" that the outcome of the trial would have been different if the jury had also heard the accounts of Robert Johnson, Gentry Johnson, and Mr. Bennett. *Strickland*, 466 U.S. at 694. Accordingly, on remand the circuit court should consider this claim in conjunction with Mr. Willingham's claim of actual innocence.

¶ 57                                    2. Appellate Counsel

¶ 58    Mr. Willingham also argues that the jury instructions for attempted murder and aggravated battery with a firearm given at his trial were erroneous and he has therefore made a substantial showing that his appellate counsel's failure to brief this issue on appeal resulted in a denial of effective assistance of counsel. We disagree with Mr. Willingham's premise that the court erred in giving these jury instructions.

¶ 59    Jury instructions are erroneous if an ordinary person would find them misleading or confusing. *People v. Herron*, 215 Ill. 2d 167, 187-88 (2005). Where, as here, purported errors in jury instructions were not objected to at trial and not raised in a posttrial motion, they are generally forfeited. *Id.* at 175. However, Illinois Supreme Court Rule 451(c) (eff. Apr. 8, 2013) provides an exception to this rule for errors in jury instructions that constitute "substantial defects." This rule is coextensive with and interpreted identically to the plain error clause of Illinois Supreme Court

Rule 615(a) (eff. Jan. 1, 1967). *People v. Cavazos*, 2015 IL App (2d) 120171, ¶ 71.

¶ 60    Under the plain error doctrine, a reviewing court may consider an error not properly preserved if there was a clear and obvious error and either (1) the evidence is so closely balanced that the jury may have convicted based on the error or (2) the error "is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Sargent*, 239 Ill. 2d 166, 189 (2010). Whether jury instructions fail to accurately reflect the applicable law is subject to *de novo* review. *People v. Anderson*, 2012 IL App (1st) 103288, ¶ 34. Mr. Willingham argues that both prongs of the plain error doctrine are met. However, for either prong of the doctrine to apply, there must have been some error in the first place. *People v. Hanson*, 238 Ill. 2d 74, 115 (2010).

¶ 61    Illinois Supreme Court Rule 451(a) (eff. Apr. 8, 2013) requires that applicable Illinois Pattern Jury Instructions, Criminal, "shall be used," unless the trial court determines that a particular instruction "does not accurately state the law." Modifications to the instructions only are appropriate when a court must "accommodate unusual facts or intervening changes in the laws." (Internal quotation marks omitted.) *People v. Edmondson*, 2018 IL App (1st) 151381, ¶ 63.

¶ 62    The pattern jury instruction for attempted murder given at Mr. Willingham's trial stated, "the State must prove *** [t]hat the defendant performed an act which constituted a substantial step toward the killing of an individual" and that he did such act "with the intent to kill an individual." Illinois Pattern Jury Instructions, Criminal, No. 6.07X (3d ed. 1992). The aggravated battery with a firearm instruction stated, "the State must prove *** [t]hat the defendant *** knowingly caused any injury to another person *** by discharging a firearm." Illinois Pattern Jury Instructions, Criminal, No. 11.24 (3d ed. Supp. 1996). Mr. Willingham argues both instructions were inadequate because they failed to specifically name the victim, Mr. Scott.

¶ 63    Jury instructions for attempted murder generally do not specify a victim's name, "nor is there a place for the victim's name in the Illinois Pattern Jury Instructions." *People v. Malone*, 37 Ill. App. 3d 185, 191 (1976). Indeed, the pattern instructions intentionally refer to "an individual" to allow for the doctrine of transferred intent. *Edmondson*, 2018 IL App (1st) 151381, ¶ 65. This doctrine also applies to aggravated battery. See *People v. Dorn*, 378 Ill. App. 3d 693, 698-99 (2008). As stated above, we have recognized that a trial court should deviate from the Illinois Pattern Jury Instructions and include a specific victim's name if this is necessary to accommodate "unusual facts" that might otherwise confuse the jury. *Edmondson*, 2018 IL App (1st) 151381, ¶ 63.

¶ 64    Mr. Willingham argues that the facts of his case are the kind of unusual facts that could confuse the jury and are "identical" to *Anderson*, 2012 IL App (1st) 103288—a case decided almost 14 years after his appeal—in which this court reversed an attempted murder conviction based on the trial court's failure to specify the name of the victim in the instruction. In *Anderson*, the defendant was charged with first degree murder, attempted first degree murder, and aggravated discharge of a weapon. *Id.* ¶ 1. The incident leading to these charges occurred at a sandwich shop a few hours after midnight, where an altercation broke out between the defendant and another individual, ending with the defendant shooting and killing the other individual. *Id.* ¶¶ 6-7. A witness saw the shooting and then fled in his car. *Id.* He heard more shots but did not see any bullet holes in his car and did not see in what direction the shots were fired. *Id.* ¶¶ 7-8. The jury instructions for the attempted murder charge did not indicate that the defendant was being tried for the attempted murder of the fleeing witness. *Id.* ¶ 24. The jury found the defendant guilty of all three offenses. *Id.* ¶ 27. On appeal, the defendant argued that the attempted murder instruction should have included the witness's name because the jury could have misunderstood the charges

and convicted him of attempted murder solely because he shot at the murder victim. *Id.* ¶ 56. The court in *Anderson* agreed, finding that, "under the narrow set of facts of this case," the jury instructions were erroneous. *Id.* ¶ 64. The court reversed under the first prong of the plain error doctrine, finding that given the almost complete lack of evidence that the defendant shot at the fleeing witness, it was possible the jury's verdict resulted from its incorrect belief that it could convict the defendant of both murder and attempted murder of the same victim. *Id.* ¶¶ 65-66.

¶ 65    We agree with the State that these facts are easily differentiated from Mr. Willingham's case. In *Anderson*, there was effectively no evidence that the defendant attempted to murder the fleeing witness, who was the subject of the attempted murder charge. It is unclear if the defendant was even aware of the eyewitness's presence or ever shot in that man's direction. The eyewitness was not shot, and all that he could testify to was that he heard shots as he fled the sandwich shop. *Id.* ¶ 65. Here, by contrast, Mr. Scott was actually hit with a bullet, making it readily apparent to the jury that he was the victim of a separate shooting from that of the murder victim.

¶ 66    As we have recognized several times, the fact pattern in *Anderson* is unusual. See, *e.g.*, *Edmondson*, 2018 IL App (1st) 151381, ¶ 74; *People v. Cavazos*, 2015 IL App (2d) 120171, ¶ 79. As the court in *Edmondson* explained:

> "We never held that juror confusion is probable, or that the IPI instructions must be modified, whenever a shooting gives rise to an attempted-murder charge against one victim and another charge against a different victim. Rather, as the Second District noted in distinguishing *Anderson*, our conclusion that the IPI instructions were erroneous in that case was shaped by the fact that the evidence was 'closely balanced,' and in a rather unusual way." *Edmondson*, 2018 IL App (1st) 151381, ¶ 74.

¶ 67    It is also significant that the jury was informed who the victim of the attempted murder

24

charge was by the indictment, which was read during *voir dire*, and the State's opening and closing arguments. *People v. Valadovinos*, 2014 IL App (1st) 130076, ¶¶ 34-35; see also *People v. Stevenson*, 198 Ill. App. 3d 376, 381-82 (1990) (finding that comments made by both the State and defense counsel were sufficient to overcome ambiguity in the jury instructions).

¶ 68    Mr. Willingham also argues that the instruction given in his case improperly failed to tell the jurors that, to find him guilty, they had to determine he possessed the specific intent to kill Mr. Scott and not Shiquita Fleming. However, a conviction for attempted murder can be based on transferred intent. *People v. Hill*, 276 Ill. App. 3d 683, 688 (1995). A specific intent to kill must be shown but not the intent to kill a particular person. *Id.* It is for this reason that the requisite intent has routinely been found in cases where a defendant shoots someone while firing into a crowd, even if he or she was not aiming at the person who was shot. *People v. Loera*, 250 Ill. App. 3d 31, 44 (1993); see also *People v. Garcia*, 407 Ill. App. 3d 195, 201-02 (2011) (intent to kill found where the defendant fired two bullets in the direction of an occupied car and a crowded street); *People v. Carvajal*, 241 Ill. App. 3d 886, 896 (1993) (intent to kill apparent where the defendants fired their guns into a crowd of rival gang members); *People v. Mendez*, 221 Ill. App. 3d 868, 877 (1991) (same). The jury in this case was thus properly instructed on the law of attempted murder.

¶ 69    There having been no error for appellate counsel to raise on direct appeal, Mr. Willingham has failed to show plain error under either prong and thus has no basis for his claim of ineffective assistance of appellate counsel.

¶ 70                                    IV. CONCLUSION

¶ 71    For the reasons above, Mr. Willingham has made a substantial showing of both actual innocence and ineffective assistance of trial counsel. He has failed to make such a showing on his

claim of ineffective assistance of appellate counsel. Accordingly, we reverse in part the second-stage dismissal of his postconviction petition and remand for an evidentiary hearing on his actual innocence and ineffective assistance of trial counsel claims.

¶ 72    Affirmed in part and reversed in part; cause remanded.

---

**No. 1-16-2250**

---

| | |
|---|---|
| **Cite as:** | *People v. Willingham*, 2020 IL App (1st) 162250 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 95-CR-20771; the Hon. Brian Flaherty, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Christopher R. Bendik, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Brian K. Hodes, Assistant State's Attorneys, of counsel), for the People. |

---