2021 IL App (1st) 182161-U
No. 1-18-2161
Order filed June 30, 2021

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 10 CR 5866 |
| | ) | |
| IGNACIO VALADOVINOS, | ) | Honorable |
| | ) | Arthur F. Hill, Jr., |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HYMAN delivered the judgment of the court.
Justices Pierce and Coghlan concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Circuit court's second-stage dismissal of defendant's postconviction petition is affirmed over defendant's claims of actual innocence based on newly discovered eyewitness testimony and ineffective assistance of trial counsel.

¶ 2    Defendant Ignacio Valadovinos appeals the circuit court's second-stage dismissal of his postconviction petition. Valadovinos contends he made a substantial showing newly discovered eyewitness testimony established actual innocence and the ineffectiveness of his trial counsel. We affirm. The eyewitness affidavits neither support Valadovinos's claim of actual innocence nor add

anything to what the jury already heard. In addition, his trial counsel's decisions do not establish prejudice and his claim of ineffective assistance fails.

¶ 3                                                Background

¶ 4        The State proceeded to trial on one count each of attempted first-degree murder of Ernesto Fernandez while personally discharging a firearm (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2010)), aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2010)), and aggravated battery of a peace officer (720 ILCS 5/12-4(b)(18) (West 2010)). Valadovinos committed aggravated battery of a peace officer after a foot chase that resulted in his arrest.

¶ 5        A jury convicted Valadovinos on all three counts and the trial court sentenced him to a total of 43 years' imprisonment. On direct appeal, we affirmed Valadovinos's convictions over his challenges to the jury instructions and sentence. *People v. Valadovinos*, 2014 IL App (1st) 130076.

¶ 6        This appeal concerns Valadovinos's postconviction claims of actual innocence and ineffective assistance of trial counsel concerning the attempted first-degree murder count. Thus, we recite the trial evidence necessary to decide this appeal.

¶ 7        At trial, Ernesto Fernandez testified he, his brother Carlos Fernandez, and their cousin Ebelia Ocampo were at Jean's Restaurant at the intersection of West 25th Place and South California Avenue at about 2:00 a.m. on February 28, 2010. (Both Ernesto and Carlos Fernandez were trial witnesses. For clarity, we refer to them by either their first names or full names.) The Fernandezes became involved in a fight with 10 to 12 people, which began inside Jean's and moved outside to the middle of California Avenue. Ernesto saw a Dodge Stratus driving "fast" down California, and he "pulled back" to avoid being struck. The Stratus stopped 40 to 45 feet

away from Ernesto, and he saw Valadovinos, whom he identified in court, leave the passenger side holding a gun.

¶ 8    Valadovinos approached Ernesto and began firing. Ernesto "tr[ied] to dodge the bullets" by "flipping" or "dancing" and never turned his back to Valadovinos. Ernesto heard four or five gunshots. He "fell" near 25th and California and saw "the last bullet" "hit the ground," then saw Valadovinos run back to the car. Ernesto was 10 to 12 feet away the last time he saw Valadovinos. The Stratus "fled away." Ernesto identified Valadovinos to police in a show-up identification at the scene.

¶ 9    On cross-examination, Ernesto testified he "took a couple of shots" of alcohol at Jean's. The fight stopped when the Stratus approached, and the crowd moved out of the way. Then, "some of the people that were there started screaming at the car" and "threw a bottle at the car." When Valadovinos began shooting, Ernesto and "four more people" stood in the middle of California Avenue. The four individuals near Ernesto were also 10 to 12 feet away from Valadovinos when he began shooting. Ernesto was the only person Valadovinos aimed at and ran towards, but no bullets struck him. Ernesto did not recognize Valadovinos at the time, and Valadovinos said nothing before he began firing.

¶ 10    Carlos Fernandez testified he, Ernesto, and Ocampo were at Jean's. A fight involving about 10 people began inside, then moved outside to California Avenue. Carlos was fighting another individual in a "grass parkway" across California when he heard someone yell out and he stopped fighting. Carlos saw a green Dodge Stratus driving northbound "toward where [his] brother was." The Stratus stopped in front of a gyros restaurant at the northwest corner of 25th Place and California Avenue.

¶ 11    Carlos saw Valadovinos, whom he identified in court, step out of the front passenger side of the Stratus holding a gun, walk around the car, point the gun at Ernesto, approach within four feet, and fire at him. Carlos heard five or six gunshots. Ernesto was "zigzagging trying to avoid the shots." He did not see Valadovinos point the gun at anyone else.

¶ 12    Valadovinos stopped firing and ran back toward the Stratus. Valadovinos pointed the gun at Carlos, and Carlos heard a "click." Valadovinos got in the front passenger side of the Stratus, which drove northbound on California. Carlos later identified Valadovinos to police in a show-up identification at the scene.

¶ 13    On cross-examination, Carlos testified (i) he did not see Ernesto take any shots of alcohol at Jean's; (ii) the Stratus passed by Carlos before it stopped in front of the gyros restaurant; (iii) Ernesto was "standing by himself" when Valadovinos fired the gun at him; and (iv) a bullet gazed Ernesto's arm, but he did not go to the hospital.

¶ 14    Ebelia Ocampo testified she saw Ernesto and Carlos in a fight involving some 10 people inside Jean's. The fight moved out to California Avenue; Ocampo went to the corner of 25th and California but did not go into the street. She saw a dark-colored car traveling northbound, which stopped in front of the gyros restaurant. A man stepped out of the passenger side; she did not "get a good look at him" because she "went behind a truck." She saw "the fire" and heard shouting and gunshots as she hid behind the truck. She did not see who was shooting or where the shooting occurred. When the gunshots stopped, Ocampo "heard Ernesto screaming he had gotten shot" and saw the car "spe[e]d off." When police arrived, Ocampo was "unable to identify" the shooter.

¶ 15    On cross-examination, Ocampo testified three other men stood around Ernesto "in the street" when the shooting began.

¶ 16    Chicago police lieutenant Paul Kane testified he was on duty, in uniform, and driving a marked police car. At about 2:20 a.m., he saw a crowd in the street on California Avenue near 25th Place "around" a green Dodge Stratus and heard four or five gunshots from the direction of the crowd. A second or two later, he saw the Stratus drive away quickly. Kane followed the Stratus. It stopped near West 24th Street and South Rockwell Street, and Valadovinos, whom he identified in court, got out of the front passenger side and ran northbound on Rockwell. Assisting units were approaching and, later, he saw Valadovinos in officers' custody.

¶ 17    Chicago police officer Rocco Pruger testified he was on duty, in uniform, and using a marked police car. He and his partner Officer Todd Mueller arrested Valadovinos, whom he identified in court, on the 2600 block of West 24th Street. Pruger tackled Valadovinos to the ground after a foot chase, and Valadovinos headbutted him.

¶ 18    Chicago police officer Todd Mueller testified he responded to a radio dispatch regarding shots fired and a green Dodge Stratus near West 26th Street and South California Avenue. Mueller saw Valadovinos, whom he identified in court, throw a handgun on the 2600 block of West 24th Street during a foot chase. Shortly afterward, Mueller assisted in arresting Valadovinos.

¶ 19    Chicago Police evidence technician Theodore Delis testified he recovered an unloaded semiautomatic pistol from the 2600 block of West 24th Street and inventoried it. He also recovered five fired cartridge cases from the 2500 block of South California Avenue and inventoried them. The State moved photographs of the pistol and cartridge cases into evidence.

¶ 20    Illinois State Police forensic scientist Tonia Brubaker testified she performed testing on the pistol and cartridge cases recovered and concluded the same pistol fired all five cartridge cases.

¶ 21    In closing, Valadovinos argued there was no evidence he intended to kill Ernesto because he announced no intent to do so. Moreover, "eight to ten people [were] around" the Stratus when the shooting occurred. In rebuttal, the State argued Valadovinos intended to kill Ernesto because photographs of the cartridge cases formed a "trail" "right to where Ernesto fell."

¶ 22    The jury found Valadovinos guilty of attempted first-degree murder while personally discharging a firearm, aggravated discharge of a firearm, and aggravated battery of a peace officer.

¶ 23    Valadovinos filed a motion for new trial, which the trial court denied.

¶ 24    The trial court merged the aggravated discharge of a firearm count into the attempted first-degree murder count. It sentenced Valadovinos to 43 years' imprisonment, to run concurrently with a 5-year sentence on the aggravated battery of a peace officer count.

¶ 25    The trial court denied Valadovinos's a motion to reconsider sentence.

¶ 26    On direct appeal, Valadovinos challenged the jury instructions and his sentence. *Valadovinos*, 2014 IL App (1st) 130076, ¶ 2. We affirmed but corrected the mittimus to reflect credit for time in custody before sentencing. *Id.* ¶ 3.

¶ 27    Valadovinos filed a petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2014)). In relevant part, this petition alleged the newly discovered testimony of eyewitnesses Rudolfo Zarco and Melinda Duran established Valadovinos was actually innocent of attempted first-degree murder. Valadovinos also argued trial counsel was ineffective for failing to impeach Ernesto Fernandez with his prior inconsistent statement to an Assistant State's Attorney and for failing to interview and call Zarco.

¶ 28    Duran's affidavit, which Valadovinos attached to his petition, attests Duran went to a bar near 25th and California in January or February 2010. She left the bar between 2:00 and 2:15 a.m.

and saw people fighting in the street on California. A car, driving slowly, tried to pass through the crowd fighting. People threw bottles at the car, which sped up and stopped about 50 yards away from the crowd. Duran saw "someone" get out of the car and fire a gun toward the crowd. No one was standing alone when the shooting started. Duran thought the shooter was shooting to scare the crowd. Duran later heard from Valadovinos's family about the shooting for which Valadovinos was "incarcerated." She believed it to be "the same thing [she] saw" when "the guy [got] out and start shooting."

¶ 29    Zarco's affidavit, which Valadovinos appended to his petition as a supplement with leave of court, attests he and Valadovinos were driving on the evening of February 28, 2010, when he saw a group of people fighting in the street near 25th and California. Zarco honked his horn and tried to drive through the crowd slowly; the crowd threw bottles at the car in response. Zarco parked some 50 yards away from the crowd, Valadovinos left the car, and Zarco heard gunshots. He did not see who was shooting. Zarco was willing to speak with Valadovinos's attorney, and was present at one of Valadovinos's court dates. On that date, Zarco spoke to defense counsel's "assistant," who said the "lead attorney" wanted to talk to him. Zarco never spoke to Valadovinos's "lead attorney."

¶ 30    Valadovinos also attached the affidavit of Eric Bisby, an associate at the firm representing Valadovinos in postconviction proceedings. He attests that he reviewed trial counsel's file and it contained Ernesto Fernandez's statement to an Assistant State's Attorney. The statement, attached to Valadovinos's petition, indicates Ernesto spoke to ASA Shawn McCarthy at 11:30 a.m. on February 28, 2010. Ernesto stated he was drinking at Jean's Restaurant at about 2:20 a.m. that morning when he was involved in fight that began in the restaurant and was "pushed" outside. In

addition, Ernesto saw a Dodge Stratus traveling northbound on California, which almost hit his brother Carlos, then stopped on California a few feet north of 25th Place.

¶ 31    Ernesto saw Valadovinos get out of the passenger side of the Stratus. Ernesto walked toward Valadovinos to confront him about nearly hitting Carlos. Valadovinos pulled out a gun, and Ernesto ran away as Valadovinos started shooting at him. Ernesto ran in a "zig-zag pattern looking over his shoulder at the guy shooting at him." Valadovinos shot at him eight times. Ernesto fell at the corner of 25th Place and California, and Valadovinos ran back to the Stratus, which drove away northbound on California. Ernesto described Valadovinos and the Stratus to police; he "later saw the police had the guy who shot at him."

¶ 32    The circuit court docketed the petition for second stage proceedings. The State filed a response to Valadovinos's postconviction petition and moved to dismiss it. Valadovinos filed a reply.

¶ 33    The circuit court dismissed Valadovinos's postconviction petition. The court found Zarco's and Duran's affidavits did not establish Valadovinos's actual innocence because they did not provide "total exoneration" of Valadovinos. The court also rejected Valadovinos's ineffective assistance claims, finding Zarco provided "potentially another identification of this defendant as the shooter." Hence, trial counsel's decision not to call him was reasonable. In addition, the court characterized trial counsel's decision not to impeach Ernesto with his statement to the ASA to be reasonable trial strategy.

¶ 34                                          Analysis

¶ 35    Valadovinos contends the trial court should not have dismissed his petition because it made a substantial showing newly discovered testimony from Zarco and Duran established Valadovinos

was actually innocent of attempted first-degree murder because he did not have the requisite intent to commit the offense. Valadovinos also argues that trial counsel was ineffective for failing to interview and call Zarco and failing to impeach Ernesto Fernandez with his prior inconsistent statement to the Assistant State's Attorney.

¶ 36                                        *Affidavits of Zarco and Duran*

¶ 37     "The [Post-Conviction Hearing] Act provides a remedy to a criminal defendant whose federal or state constitutional rights were substantially violated at trial or sentencing." *People v. Dupree*, 2018 IL 122307, ¶ 28. Proceedings under the Act consist of three stages of review. *People v. Johnson*, 2018 IL 122227, ¶ 14.

¶ 38     The circuit court dismissed Valadovinos's petition at the second stage. "The question raised in an appeal from an order dismissing a postconviction petition at the second stage is whether the allegations in the petition, liberally construed in favor of the petitioner and taken as true, are sufficient to invoke relief under the Act." *People v. Sanders*, 2016 IL 118123, ¶ 31. We take as true all well-pleaded allegations in the petition and supporting documentation that are not positively rebutted by the trial record. *People v. Robinson*, 2020 IL 123849, ¶ 45. "[C]redibility is not an issue at the second stage of postconviction proceedings." *Sanders*, 2016 IL 118123, ¶ 42. We review the second-stage dismissal of a postconviction petition *de novo*. *Id.*

¶ 39     Valadovinos first argues he made a substantial showing of actual innocence of attempted first degree murder. Specifically, he contends Zarco's and Duran's testimony was newly discovered, material, and would probably result in a different outcome on retrial.

¶ 40     To determine whether Valadovinos's actual innocence claim should have advanced to third-stage proceedings, we review whether he made "a substantial showing of actual innocence

such that an evidentiary hearing is warranted." *Id.*, ¶ 37. A defendant must show the evidence in question is newly discovered, material, and of such conclusive character that it would probably change the result on retrial. *Id.*, ¶ 46. Newly discovered means the evidence was discovered after trial and the defendant could not have discovered it earlier through the exercise of due diligence. *Robinson*, 2020 IL 123849, ¶ 47. Evidence is material when relevant to and probative of the defendant's innocence and "adds to the information that the fact finder heard at trial." *Id.* Evidence need not conclusively prove the defendant's innocence; rather, it is sufficient if the new evidence would probably change the result on retrial. *People v. Davis*, 2012 IL App (4th) 110305, ¶ 62. "Ultimately, the question is whether the evidence supporting the postconviction petition places the trial evidence in a different light and undermines the court's confidence in the judgment of guilt." *Robinson*, 2020 IL 123849, ¶ 48.

¶ 41    Regardless of whether Zarco and Duran's testimony is newly discovered, their affidavits do not support Valadovinos's claim of actual innocence. The affidavits are not material in several respects and add nothing to what the jury already heard. See *Id.*, ¶ 47. Both affidavits confirm someone fired a gun near 25th and California, consistent with the State's witnesses' testimony. Zarco corroborates Ernesto and Carlos Fernandez's testimony that Valadovinos got out of a car near 25th and California, just before shots were fired. Zarco and Duran do not deny Valadovinos was the shooter and do not identify anyone else as the shooter.

¶ 42    Zarco and Duran do offer three facts that were not presented at trial. These facts, however, do not support Valadovinos's claim of actual innocence. First, both witnesses claim the car drove slowly through the crowd and did not attempt to hit anyone. This fact is immaterial as Valadovinos was not charged with vehicular crimes. Second, Duran states, and Zarco suggests, the shooter fired

toward the crowd from 50 yards away, contradicting Ernesto and Carlos Fernandez's testimony that Valadovinos fired at Ernesto from 50 or fewer *feet* away. Despite this discrepancy about distance, Zarco and Duran do not claim Valadovinos did not fire the gun and was innocent.

¶ 43 Third, Duran claims no one was standing alone when the shooting started, and she therefore "thought" that the shooter fired at the crowd generally, *i.e.*, not at Ernesto specifically. But, the jury already heard evidence Ernesto was not standing alone when Valadovinos shot at him. Ernesto and Ocampo testified other people were near Ernesto when Valadovinos began firing, and Kane testified the crowd was "around" the Stratus when he heard gunshots.

¶ 44 More importantly, even if the jury were to accept Duran's claim on retrial, it could still find Valadovinos guilty, so the result of trial would not probably be different. See *Davis*, 2012 IL App (4th) 110305, ¶ 62. Specific intent to kill for attempted murder "has routinely been found in cases where a defendant shoots someone while firing into a crowd, even if he or she was not aiming at the person who was shot." *People v. Willingham*, 2020 IL App (1st) 162250, ¶ 68 ("A specific intent to kill must be shown but not the intent to kill a particular person."). Thus, Zarco's and Duran's proposed testimony is not material to Valadovinos's claim of actual innocence and probably would not change the result upon retrial.

¶ 45 Valadovinos argues Duran and Zarco's affidavits establish he "did not have the required specific intent to kill" to support the conviction for attempted first-degree murder of Ernesto because the affidavits show he "shot towards a crowd of people in order to scare them," not toward any specific individual. As explained, that is not the law of specific intent. Moreover, this argument challenges the sufficiency of the evidence of intent, not an assertion of actual innocence. A challenge to the sufficiency of the evidence does not pose a constitutional question and, thus, is

not proper in postconviction proceedings. *People v. Dunn*, 52 Ill. 2d 400, 402 (1972). Accordingly, we find the trial court properly dismissed Valadovinos's petition.

¶ 46                     *Ineffective Assistance of Counsel Claim*

¶ 47    Valadovinos also contends the circuit court should not have dismissed his petition because he made a substantial showing trial counsel rendered ineffective assistance by failing to impeach Ernesto with his statement to ASA McCarthy and failing to interview and call Zarco.

¶ 48    A criminal defendant has the right to effective assistance of trial counsel. U.S. Const., amend. VI; *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *People v. Albanese*, 104 Ill. 2d 504, 526 (1984). At the second stage of postconviction proceedings, a defendant must make a "substantial showing of a constitutional violation" to avoid dismissal. (Internal quotations omitted.) *People v. Tate*, 2012 IL 112214, ¶ 19. Specifically, the defendant must show counsel's deficient performance prejudiced him or her. *Id.*

¶ 49    To satisfy the deficient performance prong, a defendant must show trial counsel's performance was so inadequate "that counsel was not functioning as the counsel guaranteed by the sixth amendment" and must overcome the strong presumption that any challenged inaction was the product of sound trial strategy. (Internal quotations omitted.) *Dupree*, 2018 IL 122307, ¶ 44. To satisfy the prejudice prong, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotations omitted.) *People v. Veach*, 2017 IL 120649, ¶ 30. A "reasonable probability" means "a probability sufficient to undermine confidence in the outcome." (Internal quotations omitted.) *Id.* A court need only address that prong when it is easier to resolve an ineffective assistance claim based on a failure to demonstrate prejudice. *Strickland*, 466 U.S. at 697.

¶ 50    Valadovinos has not made a substantial showing trial counsel's decision not to impeach Ernesto with his statement to ASA McCarthy prejudiced him. We acknowledge inconsistencies between Ernesto's trial testimony and his statement to McCarthy, such as who the Stratus almost struck and how Ernesto avoided the bullets. But, Ernesto's statement to McCarthy would not have undermined the most important aspect of his testimony: Valadovinos pointed a gun at him and fired multiple times before fleeing in the Stratus.

¶ 51    Valadovinos argues he was prejudiced because the State's case relied heavily on Ernesto's credibility. Still, even if trial counsel had damaged Ernesto's credibility with his statement to McCarthy, Ernesto's testimony was not the only evidence establishing Valadovinos's guilt. Carlos identified Valadovinos as the shooter. Kane saw Valadovinos run out of the Stratus involved in the shooting. Pruger and Mueller saw Valadovinos throw a gun during the foot chase and arrested him within 20 minutes of the shooting and two blocks from the scene. Cartridge cases recovered matched the gun Valadovinos threw during the chase.

¶ 52    We acknowledge there are some inconsistencies between Ernesto's trial testimony and his statement to McCarthy, such as who the Stratus almost struck and how Ernesto avoided the bullets. But, Ernesto's statement to McCarthy would not have undermined the most important aspect of his testimony, which is that Valadovinos pointed a gun at him and fired multiple times before fleeing in the Stratus.

¶ 53    Similarly, Valadovinos has not made a substantial showing trial counsel's decision not to interview or call Zarco prejudiced him. Zarco's testimony was as favorable to the State as it was to Valadovinos. Zarco placed Valadovinos at the time and location of the shooting. He corroborated Ernesto and Carlos Fernandez's testimony that Valadovinos got out of a car near 25th

and California shortly before the shooting started. Zarco did not see the shooting itself. The absence of Zarco's testimony at trial, circumstantially inculpatory of Valadovinos, could not have prejudiced Valadovinos.

¶ 54    The only potential prejudice Valadovinos identifies is his claim "Zarco's testimony would have impeached Ernesto'[s] testimony that he was almost struck by the car driving through the crowd and how far away the car stopped from Ernesto." The absence of these relatively minor points of contradiction do not amount to prejudice. Whether the car nearly struck anyone is immaterial, as explained. In addition, a dispute about how far Valadovinos was from Ernesto when he fired a gun would not create doubt as to *whether* Valadovinos fired a gun.

¶ 55    Valadovinos suggests trial counsel should have called Zarco to imply Valadovinos did shoot at Ernesto, but from 50 yards away. We cannot see how that strategy would have changed the jury's conclusion, especially given that the jury could have found Valadovinos guilty of attempted first-degree murder for firing into a crowd. See *Willingham*, 2020 IL App (1st) 162250, ¶ 68 (specific intent to kill for attempted murder is found where defendant "shoots someone while firing into a crowd, even if he or she was not aiming at the person who was shot"). Accordingly, Valadovinos has not established prejudice and his claim of ineffective assistance fails.

¶ 56    Affirmed.