NOTICE

Decision filed 05/07/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230609-U

NO. 5-23-0609

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 14-CF-1517 |
| | ) | |
| CRAIG D. MILLER, | ) | Honorable |
| | ) | Kyle A. Napp, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE WELCH delivered the judgment of the court.
Justices Moore and Boie concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The circuit court did not err procedurally or substantively in summarily dismissing defendant's postconviction petition where the dismissal occurred within 90 days of filing and the petition's substantive contentions were clearly nonmeritorious. As any argument to the contrary would lack merit, we grant defendant's appointed counsel on appeal leave to withdraw and affirm the circuit court's judgment.

¶ 2     Defendant, Craig D. Miller, appeals the circuit court's order summarily dismissing his postconviction petition. His appointed appellate counsel, the Office of the State Appellate Defender (OSAD), has concluded that there is no reasonably meritorious argument that the court erred in doing so. Accordingly, it has filed a motion to withdraw as counsel along with a supporting memorandum. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987). OSAD has notified defendant of its motion, this court has provided him with an opportunity to respond, and he has filed a brief response. However, after considering the record on appeal, OSAD's motion and supporting brief,

1

and defendant's response, we agree that this appeal presents no reasonably meritorious issues. Thus, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 3                                    BACKGROUND

¶ 4      Defendant was charged with first degree murder for the death of Malik Garrett. Shortly after Garrett was shot to death in the parking lot of Smiley's Grocery in Madison, the police arrested defendant and interviewed him. Defendant, who was 17 years old at the time, initially denied involvement, but eventually confessed that he shot Garrett. He did so, he said, because he was afraid that Garrett posed a continuing threat to his family.

¶ 5      Prior to trial, defense counsel moved to suppress defendant's statements, alleging that defendant did not understand the *Miranda* warnings and, therefore, his statement was involuntary. Following a hearing during which the State played excerpts of defendant's statements, the court denied the motion. The court noted that it was a "calm interview between individuals" and found that defendant's *Miranda* waiver was knowing and voluntary. The court also denied a motion to reconsider.

¶ 6      Defense counsel filed a second motion to suppress based on a newly enacted statutory amendment addressing *Miranda* warnings and waivers for juveniles. See 705 ILCS 405/5-401.5(a-5) (West 2018). Counsel also moved to quash defendant's arrest on the basis that the police did not tell him the reason for his arrest in violation of section 103-1(b) of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-1(b) (West 2018)). After a hearing, the court denied both motions. It stated that the statutory amendment was not retroactive and that it had "heard the evidence" and "watched the tapes."

¶ 7      Briefly summarized, the evidence at trial showed the following. Defendant lived with Yolanda Edwards, an adult cousin who was "like a mother" to him. On the evening of July 11,

2

2014, someone fired shots into the house, nearly hitting Edwards. The police were called, but they did not block off the home, prevent people from entering, or conduct any formal interviews. Defendant later heard from a relative that Garrett, a member of a gang that had harassed defendant for years, was the shooter.

¶ 8     Convinced that the police would not help him, defendant set off with two companions to find Garrett himself. He located Garrett in the parking lot of Smiley's grocery.

¶ 9     Multiple witnesses testified that Garrett identified defendant by name as the person who shot him. Kristie Miller testified that defendant flagged her down in that area and she drove him back to his home in Brooklyn. The State played surveillance videos that showed defendant chasing the victim in the parking lot and later running to a gold sedan several blocks away.

¶ 10    Defendant testified that he had been shot at "[c]ountless" times, beginning when he was 13 years old. He had been in confrontations with Garrett before July 11, 2014. Garrett and his friends had shot at defendant several times. After the shooting at his house, he felt like he and his family were in danger. He did not think that the police would protect them, and that he "had to take matters into [his] own hands."

¶ 11    The jury was instructed on first and second degree murder and found defendant guilty of first degree murder. The trial court sentenced him to 40 years' imprisonment.

¶ 12    On direct appeal, defendant argued that the trial court erred by denying his motion to suppress, that defense counsel was ineffective, and that his sentence was excessive. On the first point, he renewed his argument that the amendments to section 5-401.5(a-5) of the Juvenile Court Act of 1987 (705 ILCS 5/5-401.5(a-5) (West 2016)) should apply retroactively to him. We declined to reach the merits of the issue after finding that, even if his statement had been

3

suppressed, the remaining evidence of his guilt was overwhelming. *People v. Miller*, 2020 IL App (5th) 170404-U, ¶¶ 46-47. We rejected defendant's remaining contentions and affirmed. *Id.* ¶ 66.

¶ 13    On May 2, 2023, defendant filed a postconviction petition. It alleged that trial counsel was ineffective for failing to investigate, interview, and call at the suppression hearing an expert witness, such as a forensic clinical psychologist, to testify about defendant's learning disability, "IQ level and comprehension skills." The petition further alleged that expert testimony would have shown that defendant did not fully understand the *Miranda* warnings and that his "Intellectual IQ limitations made him mentally retarded and significantly subaverage." The petition further claimed that the trial court had failed to consider defendant's intelligence, background, mental capacity, and education in finding that he intelligently waived his right against self-incrimination.

¶ 14    Finally, the petition alleged that both trial and appellate counsels were ineffective for failing to argue that the amended section 5-401.5(a-5) "directly related" to his circumstances. Defendant attached his own affidavit, which states that he "never really understood the scope" of the *Miranda* warnings. He told his trial attorney "about his lack of understanding and low comprehension ability to pick up things as quick as others." He also told his attorney to retain an expert and assess his deficiencies at the motion to suppress hearing, but counsel did not do so.

¶ 15    On July 19, 2023, the court summarily dismissed the petition, finding that its claims were "conclusory in nature with no supporting facts." Defendant timely appeals.

¶ 16                                    ANALYSIS

¶ 17    OSAD concludes that there is no good-faith argument that the court erred procedurally or substantively in dismissing defendant's petition. We agree.

¶ 18    OSAD first notes that the court complied with the procedural requirements for summary dismissal. The Post-Conviction Hearing Act (Act) provides a remedy for a defendant who suffers

4

a substantial denial of a constitutional right during the criminal proceedings resulting in his conviction. 725 ILCS 5/122-1 *et seq.* (West 2022). There are three stages of circuit court review of a postconviction petition. *People v. Hodges*, 234 Ill. 2d 1, 10-11 (2009). At the first stage, the court must review the petition to decide if it is frivolous and patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2022); *Hodges*, 234 Ill. 2d at 10. A claim is frivolous and patently without merit when it has no arguable basis in law or in fact. *Hodges*, 234 Ill. 2d at 16. We review *de novo* the summary dismissal of a postconviction petition. *People v. Mabrey*, 2016 IL App (1st) 141359, ¶ 19.

¶ 19    Under the Act, the circuit court has 90 days during which it may summarily dismiss a petition. 725 ILCS 5/122-2.1(a)(2) (West 2022). Here, defendant's petition was file-stamped on May 2, 2023, and summarily dismissed by the circuit court on July 19, 2023, or 77 days later. Thus, the court acted within the 90-day provision for summarily dismissing an initial petition.

¶ 20    OSAD further contends that the court did not err substantively by dismissing the petition because its claims clearly lacked merit. Defendant first claimed that his trial counsel was ineffective for failing to obtain an expert witness to testify about his learning disability, "IQ level and comprehension skills."

¶ 21    To succeed on a claim of ineffective assistance of counsel under the *Strickland* standard, one must show both that (1) counsel's representation fell below an objective standard of reasonableness (deficient performance prong) and (2) a reasonable probability exists that, but for the error, the result would have been different (prejudice prong). *People v. Manning*, 241 Ill. 2d 319, 326 (2011) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). A defendant must satisfy both prongs of the *Strickland* test to succeed on a claim of ineffective assistance of counsel. *People*

5

*v. Evans*, 209 Ill. 2d 194, 220 (2004). Thus, the failure to establish either deficient performance or prejudice will be fatal to the claim. *People v. Richardson*, 189 Ill. 2d 401, 411 (2000).

¶ 22     Defendant can establish neither *Strickland* prong. With regard to the first prong, OSAD argues, and the trial court observed, that defendant's claim is vague and conclusory. The petition does not allege what defendant's IQ is, the nature of his learning disability, or how these impacted his ability to understand the *Miranda* warnings. Broad conclusory allegations of ineffective assistance of counsel are not enough to avoid summary dismissal. *People v. Lewis*, 2017 IL App (1st) 150070, ¶ 16.

¶ 23     Critically, defendant did not allege that there was a witness who was willing and able to testify as he hoped. While a *pro se* petition is not expected to set forth a complete and detailed factual recitation, it must set forth some objective facts that can be corroborated or explain why those facts are absent. *People v. Delton*, 227 Ill. 2d 247, 254-55 (2008). As a result, the failure to either attach the necessary " 'affidavits, records, or other evidence' " or explain their absence is fatal to a postconviction petition and justifies the petition's summary dismissal. *Id.* at 255 (quoting 725 ILCS 5/122-2 (West 2004)). Specifically, a claim that trial counsel failed to investigate and call a witness must be supported by an affidavit from the proposed witness. *People v. Enis*, 194 Ill. 2d 361, 380 (2000). In the absence of such an affidavit, a reviewing court cannot decide whether the proposed witness could have provided testimony favorable to the defendant, and further review of the claim is unnecessary. *Id.*

¶ 24     Moreover, defendant cannot establish prejudice with regard to this claim. On direct appeal, we held that any error in denying his motion to suppress statements was harmless given that the remaining evidence of his guilt was overwhelming. *Miller*, 2020 IL App (5th) 170404-U, ¶¶ 46-

47. Thus, even if counsel had presented expert testimony in support of the motion to suppress and the court granted the motion, it would not have changed the outcome of the trial.

¶ 25 In his response, defendant insists that he informed defense counsel that he had a "learning disability, low IQ, and comprehension," and that, once he did so, "it was up to his counsel to investigate or hire an expert" to see if the allegations were "factual." This is incorrect.

¶ 26 In evaluating allegations of ineffective assistance, we must indulge a "strong presumption that the challenged action or inaction of counsel was the product of sound trial strategy and not of incompetence." *People v. Coleman*, 183 Ill. 2d 366, 397 (1998). Decisions regarding which evidence to present and which witnesses to call are matters of trial strategy. *People v. Williams*, 2017 IL App (1st) 152021, ¶ 38. Defendant alleges that he told defense counsel about his intellectual limitations, and counsel filed a motion to suppress his statements on the ground that defendant did not fully comprehend the *Miranda* warnings. In the absence of an allegation that counsel was aware of a specific witness or witnesses that he failed to investigate, we must presume that the decision not to call additional witnesses in support of the motion was trial strategy.

¶ 27 The petition further contended that both trial and appellate counsels were ineffective for failing to argue that the amended version of section 5-401.5(a-5) "directly related" to his circumstances. As OSAD notes, the record refutes this claim, as both trial and appellate counsel argued that defendant's statements should have been suppressed because the amended statute applied retroactively. See *Miller*, 2020 IL App (5th) 170404-U, ¶ 41 (counsel argued on appeal that amendments to section 5-401.5 that provide additional *Miranda* protections for juveniles and were effective on January 1, 2017, should apply retroactively to him). The trial court noted that defendant had been interrogated over two years before the statute's effective date and found that the amendments to the statute did not apply retroactively.

¶ 28    The final claim in the petition was that trial court failed to consider his intelligence, background, mental capacity, and education when determining that he intelligently waived his right against self-incrimination. The record does not support this assertion.

¶ 29    Defense counsel filed a motion to suppress defendant's statements, arguing that they were involuntary because he did not fully understand the *Miranda* warnings. A valid *Miranda* waiver occurs where (1) the decision to relinquish those rights was voluntary and (2) it was made with full awareness of the rights being abandoned and the consequences of doing so. *People v. Pabello*, 2019 IL App (2d) 170867, ¶ 39. A "trial court is presumed to know the law *** and to apply it properly, absent a strong affirmative showing to the contrary in the record." *People v. Joiner*, 2018 IL App (1st) 150343, ¶ 70. Thus, absent a strong affirmative showing to the contrary in the record—and defendant does not direct us to one—the court in denying the suppression motion must necessarily have considered defendant's awareness of his rights and the consequences of waiving them. Moreover, our previous finding that any error in denying the suppression motion was harmless given the strength of the State's other evidence, we need not revisit the issue.

¶ 30                                    CONCLUSION

¶ 31    As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and affirm the circuit court's judgment.


¶ 32    Motion granted; judgment affirmed.